DANIEL M. BROWN, Appellant, *v.* ABEL BROWN and WILLIAM BROWN.

Under the statute of 1821, in reference to advancements, no particular form of words was required, in an entry made by the father, to show an advancement; an entry on the books of the deceased, of property delivered to a child, made in such a manner as to exclude the idea of a debt, is evidence that it was intended as an advancement; and the intention need not be expressed in the entry.

An entry made by a father upon a book, other than the one on which he charged his accounts of debt and credit, and made in these words, " Property delivered William and Abel Brown, viz. Notes $200," &c., was held admissible as tending to prove that the property specified in the entry was delivered as an advancement.

APPEAL from the probate court.

The plaintiff claimed that certain advancements had been made by James Brown, father of the parties, to the defendants, Abel Brown and William Brown, which should be reckoned towards their share in their father's estate. Trial by jury.

The plaintiff, to prove that such advancements had been made, offered in evidence a book, in which were the following entries in the hand writing of the said James Brown, viz:

" April, 1833. Property delivered to Wm. and Abel Brown, viz:

| | | | | |
|---|---|---|---|---|
| Notes, | - | - | - | $200.00 |
| Two oxen sold for beef, | | - | - | 80.00 |
| One steer to J. P. Ladd, | - | - | | 35.00 |
| Wheat in winter, | - | - | - | 25.00 |

Brown *v.* Brown et al.

July 2, 1833. The avails of wool,   -   37.50
    Handed William $10 note on Whitehall Bank.
    (Rec'd ($10.)
Octo. 1833. Sold four young steers for   -   72.00
Jan. 1834. To pork, 6 hogs, sold for seventy nine
    dollars,   -    -    -   79.00
    (Expenses and salt deducted $9.00.)
June 17, 1834. Money handed Abel out of the price
    of 6 young cattle sold O'Brien, $43.50,    43.50
July 10th. Sold the wool to Landon, 44 fleeces, at
    34 cts. per lb.   -    -    -    39.00

Also the deposition of John Chamberlain, administrator of the estate of said James Brown, to prove that said book was found by the witness among the other books and papers of the intestate, and that it was not the regular and ordinary book in which the intestate kept his charges of indebtedness; but that the intestate had another book in which he made such charges. Also to prove that, about the time defendants bought a farm of one Jesse Landon, the intestate told the witness that "he was going to help William and Abel pay for their farm to the amount of eight hundred dollars, or more, and then he intended to help his girls, — that he should let them have the use of his farm and stock for three years." Also the testimony of one Alsen Landon, to prove that, sometime in the winter of 1833, his brother, Jesse Landon, sold a farm to William and Abel Brown, and that at that time a conversation was had between the said James Brown and the witness and his brother, in the presence of William Brown, in which the said James said he was going to help the boys (William and Abel) pay for the farm, — that he was going to turn out to them certain notes he had against Tobias and Martin, and other property; and likewise was going to let them have the use of his farm three years, — they supporting the said James and his wife during the time;—that he meant to help them in making their payments for the farm to the amount of seven hundred or eight hundred dollars. Also to prove that the said William and Abel did have the use of the farm and stock three years, and supported the said James and his wife; also to prove that the witness received from his brother said notes against Tobias and Martin, mentioned by said James, and that he received about two hundred dollars in money upon them.

Brown *v.* Brown et al.

All which testimony was objected to by the defendants and rejected by the court. The court directed a verdict to be returned for the defendants. Exceptions by plaintiff.

———— ———— for plaintiff.

The plaintiff claims that the evidence offered by him was legal in its character, and ought to have been admitted and given to the jury for their consideration.

1. The statute (Sl. Ed. 349, § 76) provides, that, if any sum shall have been advanced by the intestate, such advancement shall be reckoned to the share of such heir, "and that any personal estate, delivered to such heir, whereof a charge or memorandum in writing is made by such intestate," shall be deemed and taken an advancement to such heir. The plaintiff insists that the memorandum upon the book offered in evidence is a literal compliance with the requisitions of this statute, and that the testimony of Chamberlain, identifying the book, and of Landon, that, in the winter of 1833, in conversation with the witness, in presence of one of the defendants, the intestate said that he was going to turn out to them certain notes against Tobias and Martin, amounting to $200, ought to have been admitted to show the intention of the intestate, and the purpose of the memorandum.

The intestate kept a regular book, in which his ordinary charges of indebtedness were made. This memorandum was not made in that book. The inference from that circumstance is, that he did not intend to create a debt against the defendants, and that he did not intend that those articles of property should be lost sight of, but that they should be accounted for in some way; and what inference can so naturally follow, as that they should be taken into account with the heirs, enabling them to make an equal distribution of his estate, and to show that the intestate meant to deal impartially with all his children, which is the very intent of the law of advancement.

Analagous to this case is that of *Bulkeley* v. *Noble*, 2 Pick. 337. The memorandum in that case was, "Articles that I let my daughter Nancy Porter have,"—made in a book, in which charges of advancements to other children were made,—and this was held to be a sufficient memorandum within the statute. That it is competent to give evidence of what the intestate said in his life

time to prove his intent see *Weale* v. *Rue* in 13 Eng. Cond. Ch. R. 25.

2. The plaintiff also contends, that the use of the real estate for three years ought to be brought into the account, in the distribution of the intestate's estate.

That the intestate did not intend this as a debt against the defendants, for which he might have a personal claim, is very evident;—that he did not intend that these defendants should be preferred to the other children, by the amount of these sums, is equally evident ;—that he meant the others should be dealt as well by, and that this property should be accounted for in some way, in the bestowment of his favors upon his children, is certain from all his declarations and all his actions ;—and that this property was received by these defendants, with a full understanding of the whole matter, is equally certain.

The question, then, is, are we fettered by our statute of advancements, and deprived of the power of carrying out these righteous intentions of the intestate? We think not. The words of the statute are, " any deed of lands or tenements, made for love and affection," shall be deemed and taken an advancement to such heir. That this is one mode prescribed, and will put the question at rest when it is literally followed, is admitted. But that all other modes of passing an interest in real estate are excluded by the construction of that statute cannot be true.

The statute does not declare that the consideration of love and affection must be expressed in the deed. Other words of the same import would be good. Suppose the father had delivered to the son a part of his real estate, expressly toward his portion, but without deed, and the son had been in possession thirty years before the death of the father,—long enough to acquire a title twice over by the Statute of limitations,—and, on the distribution of the ancestor's estate, this should be worth more than all the rest. Shall he come in for an equal share with the others out of the residue of the estate ? Suppose the son has a deed, the consideration of which is expressed to be for love and affection, under which he entered and held, but the deed has no witness, or no seal ; it is consequently no deed, but the son has gained a title by the statute of limitations; shall this let him in for an equal share out of the residue of the.

estate? The grand object and design of the statute would be defeated in this way.

In several of the States the statutes of 22 and 23 Charles II have been adopted, and there the English construction and manner of proof has been adopted with them. In Massachusetts their statute was like ours, (see 1st Vol. Mass. Stat. 126, § 7,) that if any deed of lands or tenements be made for love and affection, the same shall be deemed and taken an advancement to such child, or children, to the value of such lands," &c. The construction of this statute was given, on great consideration, by the supreme court of that State in the case of *Quarles v. Quarles*, 4 Mass. 680. The question was, whether evidence could be admitted to show that the deed, which was given for a consideration, as expressed, of £233, was without pecuniary consideration and really intended as an advancement. Sedgwick, J., in giving his opinion said; "it is evident to my mind, that the intention of the statute was to substantiate certain species of legislative provision, which might be doubtful; and not to enumerate those particular species in exclusion of all others. Evidence of advancement may be given in many ways, by parol, by writing, and by deed other than that which is expressed." And in the same case, Sewell, J., referring to the 7th section remarks, that, " the modes of evidence there enumerated are examples only, and not exclusive provisions (p. 690.)

In the case of *Wm. Scott v. John Scott* (1 Mass. 525) the statement is, that John Scott received from his father, by deed, expressed to be for love and affection and five shillings, certain lands ;—the court admitted testimony to show that he had paid a valuable and competent consideration for the land, and that therefore it should not be reckoned as an advancement.

*Smalley, Adams* and *Hoyt* for defendants.

1. The evidence offered by the plaintiff, to prove property delivered by the intestate to the defendants as an advancement, was inadmissible.

The statute has prescribed the kind of evidence which is required to prove that property was delivered by the ancestor to the heir as an advancement, and that statute, having pointed out what shall be evidence of an advancement, necessarily excludes all other kinds of

proof. The adoption of a different rule would necessarily operate as a repeal of the statute, or at least render its provisions useless and nugatory. For instance, if property delivered by the ancestor to the heir in the presence of *one* witness is valid as an advancement, that statute making property, delivered in the presence of *two* witnesses, an advancement, is useless. If the delivery of personal property by the ancestor to the heir as an advancement may be proved by the *declarations* of the ancestor, of what benefit is the statute making the written memoranda, or charges, of the ancestor evidence ? These written memoranda, made by the ancestor, were as good evidence at common law as his oral declarations, and did not require the aid of the statute to make them evidence, if the oral declarations were admissible. *Bulkeley* v. *Noble,* 2 Pick. 337. *Ashley's case,* 4 Pick. 21. *Osgood* v. *Breed's heirs,* 17 Mass. 356. *Newell et al.* v. *Newell,* 13 Vt. 24.

2. In order to make the book, which was offered, admissible under our statute, to sustain a charge for property delivered as an advancement, it ought to contain in itself evidence of all the material facts, which it was necessary for the plaintiff to prove, to make out his case. It ought to show, 1. The delivery of the property by the ancestor to the heir, and, 2. That the property, thus delivered, was delivered as an advancement, or a part of his portion of the ancestor's estate. It is not sufficient that the book, or memorandum, should contain merely intrinsic evidence that property was delivered by the ancestor to the heir, which might have been a gift, or a sale, and then leave the object or intent of the delivery to be made out by parol evidence. The adoption of such a principle would introduce all the evils which the statute, by this provision, intended to avoid. It would leave every gift, which the ancestor might make during his life to his children, and of which he might at any time have made a memorandum for his own convenience, to be turned after his decease, by parol evidence of his declarations, into a charge against his children as an advancement. This construction of the statute is sustained by analogy of reasoning in the case upon the statute of frauds which requires a promise for the debt of another, &c., to be in writing. Roberts on Frauds 106, 115. In this case the book itself contains no intrinsic evidence that the property therein mentioned was delivered to the defendants as an advancement. It

merely proves that certain property was received by the defendants of their ancestor, but whether as gift or sale, or for what purpose, or on what account, does not appear.

3. Admitting that the book merely proves the delivery of personal property by the ancestor to the defendants, and that the object and purpose for which the property was thus delivered is to be made out by parol, the evidence offered by the plaintiff had no tendency to prove that the property mentioned in the book was delivered, or intended, as an advancement, but it does tend to prove that the property thus delivered was intended as a gift, and therefore it was inadmissible.

The opinion of the court was delivered by

Williams, Ch. J. We are agreed, in this case, that the judgment of the county court must be reversed, though we are not so far agreed on all the points made as to decide them at this time. We think the book should have been received in evidence, and submitted to the jury, as evidence of an advancement *pro tanto*. The statute in force at the death of the intestate was similar to an act passed in Massachusetts in 1783, and is as follows : "That if any heir shall have been advanced by the intestate, such advancement shall be reckoned to the share of such heir, either in whole or in part, according to the value thereof at the time of the advancement," and that any deed of lands or tenements, made for love and affection, or any personal estate delivered to such heir, whereof a charge or memorandum in writing is made by such intestate,—or delivered expressly as an advancement before two witnesses, who were requested by the intestate to take notice thereof, shall be be deemed and taken an advancement to such heir.

To me it appears that the supreme court in Massachusetts took a correct view of the statute then existing in that state, when they admitted other evidence in the case of *Scott* v. *Scott*, 1 Mass. 525, and when they said, in the case of *Quarles* v. *Quarles*, 4 Mass. 680, that it was the intention of the statute to substantiate certain species of evidence, which, without legislative provision, might be doubtful, and not to exclude other evidence ; — that the modes of evidence specified in the statute are examples only, and not exclusive provisions. I should be disposed to consider, as was determined by Lord

HARDWICK in *Fawkner* v. *Watts*, 1 Atk. 406, that parol evidence of the *declaration of the father* would not be allowed to show an advancement; but evidence of the acknowledgments of the child, that he or she have received certain sums by way of advancement, would be admissible. The receipt, admitted in the case of *Robinson* v. *Robinson*, Brayt. 59, was nothing more than an acknowledgment of the child, made in writing it is true, but not a charge or memorandum in writing, as mentioned in the statute. Between the statute of distribution in England, and the custom of London, it was said, in the case of *Elliot* v. *Collier*, 1 Ves. 15, that there was no difference, — advancements, whether on the statute or custom, being just the same. Under the custom, a child was considered fully advanced, unless the father, by writing under his hand and *seal*, not only declared that such child was not fully advanced, but likewise mentioned in certain how much the portion did amount to, so that it might appear what sum was to be brought into hotchpot. *Civil* v. *Rich*, 1 Vern. 211. From the case of *Fawkner* v. *Watts*, before mentioned, it would appear that a writing under the hand of the father, without the seal, would have the same effect.

It appears to me, that the statute was only meant to declare that the evidence there recited should be considered as evidence of an advancement. This question, however, is now of comparatively little importance, as our present statute declares what shall be evidence of an advancement, and excludes all other. As to cases arising under the old statute, it is to be noticed that the opinion expressed in the case of *Newell* v. *Newell*, 13 Vt. 24, was said to be only the opinion of the judge, and not of the court; the other members of the court then present did not coincide with the learned judge, who delivered the opinion of the court, on that subject, but did not express any dissent, as the decision of that case did not require it.

We consider that the book offered in evidence contained such a charge or memorandum in writing as was contemplated by the statute then in force; that no particular form of words is required to show an advancement; but that an entry on the books of the intestate, of property delivered to a child, made in such a manner as to exclude the idea of a debt, is evidence that it was intended for an advancement; and that the intention need not be expressed in the

memorandum, or charge.   The decision in the case of *Bulkeley* v. *Noble*, 2 Pick. 337, was to this effect, and the decision in the case of *Ashley, appellant*, 4 Pick. 21, is not opposed to it.   The decision in the latter case was made under a statute of 1805, which required that the charge, or memorandum, should be *expressed as made for an advancement*,—and moreover the charge itself implied, not a gift to the child, but an account, or debt, against him.   If goods are in point of fact delivered to and received by the child as an advancement, and charged as such, the father cannot alter the charge, and make the child a debtor ; this was determined in the case of *Dean* v. *Delaware*, 2 Vern. 628; nor can he, by any expression of his intention afterwards, charge that as a debt which was intended as an advancement.

As we are all agreed that the book offered in evidence should have been received, for that reason the judgment is reversed. Whether any further evidence of other sums received can be established, or whether the deposition of Chamberlain tends to prove any further advancement, is undecided.