[L. A. No. 3337. Department One.—June 5, 1913.]

## In the Matter of the Estate of MARGARETTA L. HAYNE, Deceased.

ESTATES OF DECEASED PERSONS—ADVANCEMENTS.—In this state, the rules governing the subject of advancements are embraced in sections 1395–1399, 1309, and 1351 of the Civil Code.

ID.—INTENT TO MAKE ADVANCEMENT—WRITTEN FORM OF CHARGE.—No special form, not even the signature of the decedent, is required to constitute a charge of the advancement in writing, as prescribed by section 1397 of the Civil Code. It is sufficient if it appears that the writing was done by the decedent and shows the intent to charge the money or property given, as an advancement, rather than as a gift or loan.

ID.—DECLARATION IN WILL.—There can be no written evidence of the intent to charge an advancement more convincing than an express statement to that effect in the last will of the decedent; and a declaration in the will of a testatrix that one of her sons, who was one of her heirs at law, had received property, by way of advancement, amounting to more than his share of the estate, is a sufficient charge in writing to constitute legal evidence of an advancement under the code.

ID.—CONSTRUCTION OF WILL AND CODICIL—DEATH OF RESIDUARY LEGATEE —EXCLUSION FROM PARTICIPATION IN ENTIRE ESTATE.—The testatrix by her will declared that one of her sons, who was one of her heirs at law, had received from her at different times, by way of advancement, certain property that was more than his share of her estate, "and therefore I leave to him nothing by this my last will, and declare that he has now no interest in my property and estate." By the residuary clause of the will she left the remainder of her estate, in equal shares, to her four other sons, one of whom afterward died prior to her death, unmarried and without issue. After the death of such residuary legatee, and with knowledge of the fact of his death without issue, she executed a codicil to her will, in which she expressly confirmed, ratified, and approved the statements of the will respecting the advancements made to the disinherited son. *Held*, that the legal effect of the codicil was the same as if the entire will with the changes made by the codicil had been executed on the date of the codicil, after the death of such residuary legatee, and that the statements respecting the advancements to such son excluded him from participation in any portion of her estate, including the one-fourth of the residue bequeathed by the will to the deceased residuary legatee.

ID.—PROVISIONS OF CODE AFFECTING ADVANCEMENTS APPLY TO CASES OF TESTACY OR INTESTACY.—The provisions of the Civil Code in reference to advancements are not limited to cases where the decedent died wholly intestate. They apply as well to cases of testacy or partial intestacy.

ID.—ADVANCEMENTS PRIOR TO WILL—INTENT OF TESTATOR—DECLARATIONS IN WILL CONTROLLING—PARTIAL INTESTACY.—While, as a general rule, advancements made before the will was executed cannot be considered in making distribution of the estate, the rule is inapplicable where the terms of the will itself show the contrary, and particularly where it expressly declares that a full advancement has been made, and it appears, as here, that the testatrix in making this declaration had in mind her entire estate, and the shares of each heir therein under the laws of descent, and that the intestacy, if any, did not occur because of ignorance of the extent of the property she owned, but either from inadvertence or design, or from a mistake as to the legal effect of the residuary clause.

ID.—SUBSEQUENT DECLARATIONS AS EVIDENCE OF TESTATOR'S INTENT.—The rule that it is the intention of the decedent at the time the property is transferred to the heir apparent that determines whether it is an advancement or a gift, and that if it was then transferred and vested as a gift, a subsequent written declaration by the decedent, not part of the *res gestae* of the transaction, that it constituted or should be taken as an advancement, is of no force and is incompetent as evidence that it was an advancement, is subject to the qualification that if the subsequent declaration is contained in a legally executed and probated will, it is competent evidence of the advancement and must prevail. Such declaration then, in effect, becomes a part of the testamentary disposition of the estate, and is evidence of the original intent.

ID.—ASSIGNMENT OF INTEREST BY HEIR—DISTRIBUTION TO TRANSFEREE.—An instrument in writing, executed by an heir at law of the testatrix, and filed in the proceeding for the distribution of her estate, formally assigning and transferring all his interest in the residue of her estate to the surviving residuary legatees, operated to transfer all his interest therein to the persons named, and authorized a distribution thereof to the transferees.

APPEAL from a decree of the Superior Court of Santa Barbara County distributing the estate of a deceased person. S. E. Crow, Judge.

The facts are stated in the opinion of the court.

Robert Harrison and Brewton A. Hayne, for Appellants.

E. W. Squier, for Respondent.

SHAW, J.—The decision of the case depends upon the meaning and legal effect of the last will and codicil of the decedent. There was a residuary clause naming as recipients of the residue of the estate four sons, one of whom had died without issue before the making of the codicil. The decedent left, as surviving heirs, four sons and a grandson, to wit: Benjamin Stiles Hayne, Brewton Alston Hayne, and Stephen Duncan Hayne (who with Arthur Perronneau Hayne, deceased, were the persons named in the residuary clause), and William Alston Hayne, the sons, and Robert Y. Hayne, the grandson, the latter being the son of Robert Y. Hayne, another son of decedent who had died before her will was made. The court below held that the decedent died intestate as to the one-fourth of the residue, being the share which the residuary clause purported to give to Arthur Perronneau Hayne, by name, and that part of the estate was distributed by the decree in shares of one-fifth each to the four sons and grandson surviving. From this portion of the decree this appeal is prosecuted by the three living sons named in the residuary clause, Benjamin, Brewton, and Stephen, so far as it gives a part of said residue to the other persons aforesaid.

The propositions advanced by the appellants are: 1. That, under the terms of the will and codicil, William Alston Hayne is excluded from participation in the estate, upon the ground that, the will declares that he had already received, by way of advancement, his full share of the whole estate, including the one-fourth of the residue as to which it is claimed she died intestate; 2. That because of the fact that at the time she made the codicil testator knew that one of the four persons named as a donee in the residuary clause of the will was dead, the legal effect of the clause was to vest the entire residue in the other three, as the only persons then capable of taking; 3. That if this is not the legal effect, the terms of the other parts of the will and codicil show that it was so intended and require it to be given that construction. Under either of the two theories last mentioned, there would be no intestacy.

The will was executed on November 24, 1906. The following are the provisions relating to the questions in controversy:

"At the request of my son Robert Y. Hayne, now deceased, I left nothing to him by my former will (referring to a will which had been destroyed by fire), leaving to him only certain family portraits." (Then follows a bequest of the portraits to the grandson, Robert Y. Hayne.)

"I declare that my son, William Alston Hayne, has received from me at different times, by way of advancement, certain tracts of land (specifying three deeds made in 1879, 1885, and 1890, respectively, embracing 23.59 acres) ; and that my said son William Alston Hayne has also received from me at various times certain loans, notes for which I have canceled, so that my said son William Alston Hayne has received already more than what would be his share of my estate, and therefore I leave to him nothing by this my last will, and declare that he has now no interest in my property and estate."

Then follow two clauses, one giving certain silver, received from her uncle, in trust for a grandson, the other giving the rest of her silver plate, the other portraits, jewelry, and personal effects to her sons William Alston Hayne, Brewton Alston Hayne, Stephen Duncan Hayne, and Arthur Perronneau Hayne. Next is the residuary clause:

"All the rest and residue of my property and estate I hereby give, devise and bequeath in equal shares to my sons Benjamin Stiles Hayne, Brewton Alston Hayne, Stephen Duncan Hayne and Arthur Perronneau Hayne—provided however" (here follows a declaration that the share of Benjamin is to go to Stephen in trust for Benjamin, it not being material here).

"If any of my sons Benjamin Stiles Hayne, Brewton Alston Hayne, Stephen Duncan Hayne or Arthur Perronneau Hayne should die during my lifetime, leaving issue, the share of such deceased son under this my last will, shall go to his issue by right of representation."

Next is a provision that if "any of my said sons shall have received" from her during her lifetime by way of advancement, or shall owe her, any sums, the same shall be deducted from the share of such son, and thereupon states that Benjamin has been advanced certain lands which are to be valued at two hundred and fifty dollars per acre.

Arthur died on April 2, 1907, unmarried and without issue. The testatrix knew of these facts. Thereafter on April 18, 1907, she made the codicil, stating therein that it was a codicil to the will of November 24, 1906. It begins by canceling the bequest of silver to a grandson and the devise to Stephen in trust for Benjamin as made in the will, and giving said property absolutely to Benjamin, less the advancements to him mentioned in the will, and then proceeds as follows:

"I further declare that the statements made in my said will other than those in relation to the said trusts are hereby confirmed, ratified and approved. And I declare that the advancements mentioned in said will to my sons Benjamin Stiles Hayne and William Alston Hayne are correct as therein stated—and I further declare that my son Stephen Duncan Hayne has received from me by way of advancement the sum of five thousand ($5000.00) dollars."

It is to be observed, at the outset, that while the legal effect of a codicil referring to a previous will is to republish the will as modified by the codicil (Civ. Code, sec. 1287), this codicil does far more. In effect, it reiterates and repeats the will, both as to the dispositions of property made thereby and as to the advancements mentioned therein. Its legal effect is the same as if the entire will with the changes made by the codicil, had been executed on April 18, 1907, after the death of Arthur. We must determine its meaning in view of the facts existing and known to her at that time, remembering, of course, that she did not then re-write the will but repeated it and re-made it by reference and express approval.

The doctrine of advancements is said to be of statutory origin, although a somewhat similar rule prevailed at common law. In this state, the rules governing the subject are embraced in the Civil Code (secs. 1309, 1351, 1395, 1396, 1397, 1398, 1399). If the amount advanced to any heir by the decedent in his lifetime exceeds the share of such heir, he must be excluded from any further portion, in the distribution of the estate. (Sec. 1396.) Section 1397 is as follows: "All gifts and grants are made as advancements, if expressed in the gift or grant to be so made, or if charged in writing by the decedent as an advancement, or acknowledged in writing as such, by the child or other successor or heir."

Similar statutes exist in many other states. It is the established rule that no special form, nor even the signature of the decedent, is required to constitute a charge of the advancement in writing as prescribed by such statutes. It will be sufficient if it appears that the writing was done by the decedent and shows the intent to charge the money or property given as an advancement, rather than as a gift or loan. Unsigned statements in the form of a charge entered in a book, or on leaves inserted at the back of a book of miscellaneous accounts, the circumstances being such as to exclude the idea that it was charged as a debt, have been held sufficient. (*Fellows* v. *Little,* 46 N. H. 27; *Brown* v. *Brown,* 16 Vt. 197; *Weatherhead* v. *Field,* 26 Vt. 665; *Bulkeley* v. *Noble,* 19 Mass. 337; *Clark* v. *Warner,* 6 Conn. 355; *Sayles* v. *Baker,* 5 R. I. 460; *Wilkinson* v. *Thomas,* 128 Ill. 363, [21 N. E. 596].) There could be no written evidence of the intent to charge an advancement more convincing than an express statement to that effect in the last will of the decedent. The declaration in the will of Mrs. Hayne that William Alston Hayne had received property, by way of advancement, amounting to more than his share of the estate, is clearly a sufficient charge in writing to constitute legal evidence of an advancement, under the code. It is true that when the statements were first made in the will Arthur was alive and the share of William would have been only one-sixth, whereas, after Arthur's death, his share was one-fifth, and William's advancements might have exceeded one-sixth without equalling one-fifth. But the codicil expressly confirms, ratifies, and approves, thus, in effect, reiterating, the statement of the will that William had been advanced more than his share of the estate, that he was to receive nothing therefrom and had no interest therein. As this was made after Arthur's death, childless and unmarried, and with knowledge thereof, it must be deemed to be a statement that the amounts received by William more than equalled the one-fifth which would then have been his share.

It is suggested by the respondent that the statutory provisions regarding advancements do not apply, except in cases where the decedent died wholly intestate. Some of the decisions so declare because the statute under consideration was believed to contain such a limitation. *Kent* v. *Hopkins,* 86

Hun, 611, [33 N. Y. Supp. 767], where the statute begun with the words "If any child of an *intestate*," is an example. Our code contains no words which imply a similar limitation. Section 1309, referring to the share of a child unprovided for in the will and making the doctrine of advancements applicable to such child, shows conclusively that our statute may apply, in proper cases, to partial intestacy. There are some general statements in the text books which apparently support the respondent's claim in this behalf. But upon examination we find that they are either modified by other portions of the text, or are based on decisions in states where the limitation is in the statute. It is, of course, true, that, as a general rule, advancements made before the will was executed cannot be considered in making distribution of the estate. The reason is that it is to be presumed that a testator had in view all previous advancements when he made his will and that he adjusted his testamentary dispositions accordingly, so as to make the final division conform to his actual wishes. (*Needles* v. *Needles*, 7 Ohio St. 432, [70 Am. Dec. 85]; *Bowron* v. *Kent*, 190 N. Y. 432, [83 N. E. 472].) But this rule has no place, and reasonably could have none, where the terms of the will itself show the contrary, and particularly where it expressly declares that a full advancement has been made and it appears, as here, that the testatrix in making this declaration had in mind her entire estate, and the shares of each heir therein under the law of descent, and that the intestacy, if any, did not occur because of ignorance of the extent of the property she owned, but either from inadvertence or design, or from a mistake as to the legal effect of the residuary clause. (*Estate of Tompkins,* 132 Cal. 175, [64 Pac. 268].)

Respondent also invokes the rule followed in many decisions, and which we do not here dispute, that it is the intention of the decedent at the time the property is transferred to the heir apparent that determines whether it is an advancement or a gift, and that if it was then transferred and vested as a gift, a subsequent written declaration by the decedent, not part of the *res gestae* of the transaction, that it constituted or should be taken as an advancement, is of no force and is incompetent as evidence that it was an advancement. (*Elliott* v. *Western C. M. Co.,* 243 Ill. 614, [134 Am. St. Rep.

398, 17 Ann. Cas. 884, 90 N. E. 1104] ; *Sherwood* v. *Smith,* 23 Conn. 521; *Bradshear* v. *Cannady,* 76 N. C. 448; *Mitchell* v. *Mitchell,* 8 Ala. 422; *Clark* v. *Warner,* 6 Conn. 355.) These decisions, however, all qualify the rule by the additional statement that if the subsequent declaration is contained in a legally executed and probated will, it is competent evidence of the advancement and must prevail. Obviously this must be so, since it then, in effect, becomes a part of the testamentary disposition of the estate, and is evidence of the original intent. (See *Estate of Tompkins,* 132 Cal. 175, [64 Pac. 268].)

Our conclusion is that the will and codicil show that William Alston Hayne has received his full share of the estate and that he should be excluded from any share thereof in the distribution. There is no merit in the claim that the making of the advancement in question was not put in issue. The death of Arthur was alleged and admitted. The question of these advancements thereupon arose upon the face of the will and codicil.

We find it unnecessary to consider the other propositions made by appellants. The petition for distribution alleged the facts, asserted that the residue vested, as matter of law, in Benjamin, Brewton, and Stephen, the three who survived of the recipients named therein; and prayed for distribution of the residue to them, accordingly. William filed an answer asserting intestacy as to the one-fourth of the residue destined to Arthur by name in the residuary clause, and asking that the same be distributed in shares of one-fifth each to the four surviving sons and Robert Y. Hayne, the grandson. On the same day said Robert Y. Hayne filed a petition declaring, in substance, that he understood his grandmother's intent as expressed in the will and codicil to be that the residue should go entirely to his uncles, Benjamin, Brewton, and Stephen, and asking that distribution thereof be made to them. Afterward, and before decree of distribution was made, he signed and filed a supplemental paper, reciting his former petition and that it had been suggested to the court that the former petition was, or might be, taken as a waiver or transfer by him of his legal interest in the residue to the contestant William Alston Hayne, avowing that he did not so intend it, and concluding with a formal assignment and transfer of

all his interest in the residue to said Benjamin, Brewton, and Stephen, and again requesting that distribution thereof be made to them. This instrument is an effectual transfer of all his interest to the persons named. The court below could properly have made distribution to the assignees as provided in section 1678 of the Code of Civil Procedure. (*Estate of Vaughn,* 92 Cal. 192, [28 Pac. 221].) Perhaps it would have done so if the assignment had been called to its attention. At all events, the assignment vests in the appellants all the interest of Robert Y. Hayne in the residue in controversy and makes it unnecessary to consider or determine whether there was an intestacy as to one-fourth of the residue or whether the will and codicil vested it all in the appellants. Upon the going down of the *remittitur* the court below may enter a decree distributing the residue to the appellants.

The order appealed from is reversed with direction to the court below to enter a decree of distribution in accordance with this opinion.

Sloss, J., and Angellotti, J., concurred.

Hearing in Bank denied.