[Civ. No. 45918. First Dist., Div. One. Nov. 28, 1979.]

ESTATE OF ELSIE A. GARIN, Deceased.
KENNETH CORY, as State Controller,
Petitioner and Appellant, v.
WILLIAM O. GARIN, as Executor, etc., et al.,
Objectors and Respondents.

**COUNSEL**

Myron Siedorf, Edwin Rosenthal and William F. Seeley for Petitioner and Appellant.

O'Donnell, Waiss, Wall & Meschke and Richard J. Wall for Objectors and Respondents.

**OPINION**

**KELLY, J.\***—This is an appeal by the State Controller (hereafter Controller) from an order of the Superior Court of Monterey County fixing the inheritance tax in the estate of Elsie A. Garin, deceased (hereafter decedent).

The report of the inheritance tax referee filed May 5, 1978, treated as an asset of her estate an *inter vivos* transfer made ostensibly as an advancement (Rev. & Tax. Code, § 13647) from the decedent to her son, Henry P. Garin, in the amount of $200,000 cash plus $56,010 federal gift tax plus $17,683 state gift tax paid by the decedent on the cash gift. The decedent's estate filed an objection to said report on June 12, 1978.

Thereafter in a hearing before the superior court, the objections were sustained and, on the order of the superior court, the referee filed an

---

*Assigned by the Chairperson of the Judicial Council.

amended report, excluding from the estate the amount of the *inter vivos* transfer ($200,000 cash) and the prepaid gift taxes. The court confirmed the order and fixed the taxes accordingly.[1] From this report the Controller filed an objection to the inheritance tax referee's report as amended, and a reply to the objections of the Controller was filed by respondents. Thereafter, on January 5, 1979, a second order fixing inheritance taxes, excluding from the estate the amount of the cash gift and taxes paid, was entered which overruled the Controller's objections.

The Controller now appeals from this latter order.

### Statement of Facts

Decedent was a widow with four children of adult age on the death of her husband in 1947. She inherited all the stock in her husband's produce business, H. P. Garin Company. Sometime in 1959 the decedent transferred all of this stock in equal shares to the four adult children, Henry, William, Robert and Elsie Jane.

Henry and William were actively involved in the Garin Company business. Robert and Elsie, although not actually in the management of the business, served as directors and exercised their respective 25 percent voting rights. After the transfer of the stock by the decedent to the aforementioned children she did not possess any share of stock in the Garin Company nor did she have any other interest in the company.

Thereafter, disagreements arose between Henry and William regarding the management of the company. In 1963 the decedent, in the interest of family harmony and the welfare of the family business, offered Henry a gift of $200,000 cash so that he might engage in business for himself on the condition that he resign as president and director of the Garin Company and that he deposit his stock in a voting trust, and, further, that he forfeit his pension benfits and his interest in the company's profit-sharing plan. He agreed, resigned as president and director, and deposited his stock in trust.

The decedent filed federal and state gift tax returns reporting the cash gift of $200,000 cash to Henry, and paid a California gift tax of $17,653.50 and a federal gift tax of $56,010 on said $200,000 gift.

---

[1]The Controller filed a notice of appeal from that order, but the appeal was eventually dismissed for failure to procure the record.

During her lifetime and prior to 1963, the decedent had established a pattern of making substantial gifts to her four children in equal shares.[2] In 1963 when she made the $200,000 gift to Henry she was financially unable to give $200,000 to each of the other three children. Consequently, she treated the $200,000 gift to Henry as an "advancement" on his share of her estate as a means of equalizing the 1963 gift to Henry. The decedent's will, prepared by an attorney and executed in 1968 provides in paragraph 6 as follows: "Transferred the sum of Two Hundred Thousand ($200,000) Dollars in 1963 to my son, HENRY P. GARIN, for use in his business. I also paid the Federal and California gift taxes on this transfer. I direct that this transfer and the amount of the gift taxes that were paid thereon shall be considered as *an advancement to my son, HENRY P. GARIN, to be deducted from the share of the estate herein provided for him. The sum so transferred and the gift taxes which I have paid shall be considered* as part of my estate for the purposes of division and distribution thereof, and shall be taken by said HENRY P. GARIN towards his share of the estate." (Italics added.)

In 1964 decedent resumed her former pattern and made additional gifts in equal amounts to the four children. Henry used the $200,000 cash gift to develop his own produce business, but in 1967 or 1968, the business went bankrupt. He has none of the $200,000 remaining. Henry's shares in the family business were eventually purchased by the three other Garin children.

Under the provisions of the Revenue and Taxation Code (§§ 13401, 13601, 13641, 13649)[3] state inheritance taxes were imposed on every "transfer" of property by a decedent whether by will or intestate succession or by certain types of *inter vivos* transactions.

To prevent tax avoidance, the inheritance tax law provides for the taxation of *specified inter vivos* transfers closely akin to or in lieu of testamentary disposition. (§ 13649; *Estate of Thurston* (1950) 36 Cal.2d. 207, 211 [223 P.2d 12]; 23 Cal.Jur.3d, Death and Gift Taxes, § 33; 5 Witkin, Summary of Cal. Law, Taxation, § 224.) Not every transfer made during the decedent's lifetime is subject to inheritance taxes; only those transfers which reduce the value of the decedent's estate are computed as part of the taxable estate. (§ 13641.) Bona fide sales are not taxable. The intent of the inheritance tax law is to tax only

[2]Beginning in 1953, decedent commenced making equal gifts to her four children.
[3]Unless other noted, all references are to the Revenue and Taxation Code.

those *inter vivos* transfers which are truly gifts made in lieu of or to avoid the passing of the property by will or the laws of succession. (§ 13649; see generally *Estate of Thurston, supra,* 36 Cal.2d 207, 211; *Estate of Bielec* (1972) 8 Cal.3d 213, 220 [104 Cal.Rptr. 516, 502 P.2d 12, 58 A.L.R.3d 1088].) "It is the intent of section 13641 and those sections incorporating its provisions to encompass within their terms those transfers which are donative in nature. They represent a legislative scheme to prevent inheritance tax evasion by imposing on the courts an obligation to 'closely scrutinize the transaction in light of the expressly declared intention of the statute "to tax every transfer made in lieu of or to avoid the passing of property by will or the laws of succession."' (*Estate of Craycroft, supra,* 191 Cal.App.2d at p. 445 [12 Cal.Rptr. 552].) When the consideration paid for a transfer of property to take effect in possession and enjoyment only at death is inadequate in value as compared to the value received in exchange, the excess is tantamount to a testamentary gift and the transfer is one which conforms to section 13641. (*Estate of Stevens* (1958) 163 Cal.App.2d 255, 268-269 [329 P.2d 337].) As will be seen, the determinative question is the adequacy of the consideration at the time when the property has been effectively committed to the purpose of the *inter vivos* agreement." (*Estate of Bielec, supra,* 8 Cal.3d 213, 222-223.)

The *inter vivos* transfers subject to the inheritance tax law are specifically described by statute and include: (a) Transfers made within three years of death and made in contemplation of death (§ 13642); (b) transfers to take effect at or after death (§ 13643); (c) transfers with a reservation to the transferor of a life income or interest (§ 13644); (d) transfers under which the transferee promises to make payments to or care for the transferor (§ 13645); (e) revocable transfers in trust (§ 13646); (f) transfer as advancement (§ 13647).

The purpose of these *mutually exclusive* sections (§§ 13641-13649) is clear, i.e., to prevent tax avoidance resulting from all *inter vivos* transfers "made in lieu of or to avoid the passing of property by will or the laws of succession." (§ 13649.) To be taxable at death, a transfer *inter vivos* must come within one such statutory provision. (*Estate of Thurston, supra,* 36 Cal.2d 207; 23 Cal.Jur.3d, Death and Gift Taxes, § 36.)

For the $200,000 cash payment to Henry to be subject to inheritance taxes under the applicable Revenue and Taxation Code it must meet

two requirements: (1) It must have been made without adequate consideration, and (2) it must fall within one of the statutory classifications of taxable *inter vivos* transfers. (See *Estate of Bielec, supra,* 8 Cal.3d 213, 220.)

The trial court in the case at bar concluded that the evidence was not sufficient to show that the gift to Henry was made in contemplation of death, and therefore viewed the gift as not taxable under the provisions of the Revenue and Taxation Code. That court also concluded that the $200,000 payment to Henry was made for adequate consideration and was therefore not an advancement within the meaning of section 13647. The Controller contests these conclusions.

I.

■ *Does the $200,000 payment to Henry fall within the statutory classification of an advancement within the Revenue and Taxation Code?*

Although the term "advancement" is not defined in the Revenue and Taxation Code, the California Administrative Code defines an advancement as follows: "13647. Advancement. An 'advancement,' or gift made by an individual during his lifetime to his child or other heir with the intention on the part of the donor that such gift shall represent a part or the whole of that portion of his estate which the child or other heir would inherit upon his death, is subject to the Inheritance Tax Law." (Cal. Admin. Code, tit. 18, § 13647.) This definition comports with the long-standing meaning of that term as a term of art. (See 2 Cal.Jur.2d, Advancements, § 2, pp. 482-484; 3 Am.Jur.2d, § 1 p. 5.)

■ An advancement must be distinguished from a simple gift. The critical question is one of intention: whether the transfer was intended to reduce the donee's share in the donor's estate. "[A]lthough every advancement is a gift, not every gift is an advancement. A gift is not an advancement unless the donor expresses . . . his intention that it be such . . . ." (2 Cal.Jur.2d, Advancements, § 2, p. 484; see also 3 Am. Jur.2d, Advancements, § 2, p. 6, § 6, pp. 8-9; *Estate of Nielsen* (1959) 169 Cal.App.2d 297, 305-306.)[4] The Probate Code provides the further

---

[4]The trial court erroneously confused two different types of taxable *inter vivos* transfers—advancements (§ 13647) and gifts made within three years of death and in contemplation of death (§ 13642). The trial court believed an advancement must be made "in contemplation of death." Accordingly, the court concluded the payment to

requirement that a gift before death "shall not be taken as an advancement to an heir...unless such intention is expressed by the testator...in writing...." (Prob. Code, § 1050; italics added.)

The trial court's ruling that the $200,000 gift to Henry was not made in contemplation of death and therefore not subject to inheritance taxes under the code is a misinterpretation of the language of the Revenue and Taxation Code. Neither the language of section 13647 (advancements) nor the case law thereunder supports this ruling.[5] An *inter vivos* gift made in contemplation of death is only one type of *inter vivos* gift subject to inheritance taxes as specified in the statute (§ 13642). Section 13647 (advancements) is also a distinct type of *inter vivos* transfer subject to an inheritance tax.

Relying on dicta in *Estate of Thurston, supra,* 36 Cal.2d 207, respondents argue that an advancement, to be taxable under Revenue and Taxation Code section 13647, must be made "in contemplation of death;" otherwise, respondents argue, all *inter vivos* gifts would be taxable contrary to the express provision of Revenue and Taxation Code section 13649.

We reject respondents' reasoning. They have confused the concepts "in contemplation of death" and "in lieu of devise or inheritance." The requirement that a gift be made "in contemplation of death" is one imposed only on gifts made within three years of death. (§ 13642.) No such requirement is imposed on other *inter vivos* taxable transfers.

■ Respondents are, of course, correct in asserting that not all *inter vivos* gifts are taxable under the inheritance tax laws; only those gifts which are "made in lieu of, or to avoid, the passing of property by will or the laws of succession" are subject to inheritance taxes. (§ 13649.)

---

Henry was not an advancement since the gift was not in contemplation of death. (*Ibid.*) Contrary to the court's ruling, however, there is no requirement that the gift be made in contemplation of death; all that is required is that the donor intend the gift to reduce the donee's share of the estate.

[5]*Estate of Thurston, supra,* 36 Cal.2d 207, cited by respondents in support of their contention that an advancement (§ 13647) must be made in contemplation of death to be subject to inheritance tax under the code, must be read with reference to the issue before this court. In *Thurston,* the question was whether the transfer under section 13644 (transfer with reservation of life estate) was subject to inheritance tax where the transferor relinquished to the transferee the life estate prior to his death. The court ruled no tax was due and then, by way of dictum, discussed what might be the tax consequences if the relinquishment of the life estate had been made in contemplation of death.

By its very definition, an advancement is a gift which is expressly stated by the donor to be a part of the estate which the donee would otherwise receive. Thus, an advancement, by its nature, constitutes a gift in lieu of a devise or inheritance. Once the determination is made that a gift constitutes an advancement, no additional showing is necessary to render it taxable under the inheritance tax laws.

 The precise language used by decedent in her will brings the transfer within the purview of the inheritance tax sections of the Revenue and Taxation Code. In paragraph 6 of her will, referring to the transfer of $200,000 to her son Henry together with the payment of the gift taxes thereon, she specifically identified the transfer as an advancement to Henry "to be deducted from his share of the estate herein provided for him" and said sums transferred "shall be taken by said Henry P. Garin towards his share of the estate."[6]

The clear and unequivocal language in the will (i.e., paragraph 6 thereof), prepared by an attorney, falls within the guidelines set out in *Estate of Nielsen, supra,* 169 Cal.App.2d 297, 303, 304, wherein the court speaks as follows: "No certain words or form of writing is required to constitute an advancement, rather than a gift or loan, so long as the writing was done by the decedent and shows that the intent was to charge such gift or loan against the portion of the estate which the donee or debtor would otherwise have taken under the will or the laws of succession."

No better manifestation of a decedent's intent to treat a gift as an advancement can be found than a statement of intention in the decedent's will. (*Estate of Hayne, supra,* 165 Cal. 568, 573; see 2 Cal.Jur.2d, Advancements, § 4, p. 487.) This unambiguous testamentary language, together with a long established pattern followed by the decedent in making equal gifts to her four children, supports the conclusion that her gift to Henry Garin was intended as an advancement. The decedent both before and after the payment to Henry treated her children equally. At the time of the $200,000 cash payment to Henry,

---

[6]The fact that the will, identifying the gift to Henry as an advancement, was made subsequent to the transfer of the cash (1963) does not vitiate it as an advancement. As stated in *Estate of Hayne* (1913) 165 Cal. 568, 575 [133 P. 277], referring to a will executed subsequent to an advancement, as is the situation of the case at bar, the court stated: "...if the subsequent declaration is contained in a legally executed and probated will, it *is* competent evidence of the advancement and must prevail. Obviously this must be so, since it then, in effect, becomes a part of the testamentary disposition of the estate, and is evidence of the original intent."

she was unable to make similar large payments to each of the other three children and so chose an alternative method of equalization. The fact that one reason for the $200,000 gift from the decedent to Henry was to assist him in getting started in his own business and to calm a family feud does not vitiate the gift as an advancement under the Revenue and Taxation Code. These other benefits were incidental to the decedent's real intention as expressed in the will. Assisting Henry to get into his own business was a classic motive for an advancement. (See 3 Am.Jur.2d, Advancements, § 33, p. 25.)

Respondents argue that the expression in decedent's will is only a statement of her intention with regard to *distribution* of her estate; she intended only that Henry's share of the estate be reduced by $200,000; she expressed no intent as to the *taxability* of the gift to Henry, and her statement in the will should not be read as such.

This argument is specious. If the gift to Henry was an advancement for purposes of distribution, then it was an advancement in every sense, and accordingly was subject to inheritance taxes pursuant to Revenue and Taxation Code section 13647.

## II.

*Did decedent receive adequate consideration for the $200,000 payment to Henry?*

"Adequate and full" consideration is specified in the Revenue and Taxation Code as consideration "in money or money's worth" (§ 13641). The California Administrative Code defines "consideration in money or money's worth" as follows: "For the purpose of the Inheritance Tax Law the term 'consideration in money or money's worth' does not include any consideration not reducible to money or a money value, such as love and affection or a promise of marriage." (Cal.Admin. Code, tit. 18, § 13641.)

Citing *Henderson v. Fisher* (1965) 236 Cal.App.2d 468, 474 [46 Cal.Rptr. 173], respondents argue that there was sufficient consideration for the transfer of the cash gift from the decedent to her son Henry, viz., his promise to and the actual giving up of his directorship in the Garin Company; the placing of his stock in trust and such other factors "as the relationship of the parties, love and affection and regard for each other and the object to be obtained by the contract." These

benefits are not the adequate consideration required under the Revenue and Taxation Code. ■ Adequate consideration, as the term is used in the inheritance tax law, has a meaning quite distinct from that of the same term as used in the law of contracts. (See 23 Cal.Jur.3d, Death and Gift Taxes, § 34.)

The cases cited by the respondents in support of their position (i.e., *Simmons* v. *California Institute of Technology* (1949) 34 Cal.2d 264, 272 [209 P.2d 581]; *Levy* v. *Bellmar Enterprises* (1966) 241 Cal.App.2d 686, 691 [50 Cal. Rptr. 842]) were breach of contract actions which did not involve any of the inheritance tax provisions of the Revenue and Taxation Code or inheritance tax problems. The principle of adequate and full consideration in terms of money or money's worth as set out in the Revenue and Taxation Code is illustrated in the *Estate of Vai* (1966) 65 Cal.2d 144 [52 Cal.Rptr. 705, 417 P.2d 161]. There, husband and wife had entered into a property settlement agreeement at the time of their divorce. In that agreement, husband agreed to provide in his will that a sufficient amount of property be left in trust for the lifetime support of the couple's mentally retarded daughter. Husband did so, and upon his death, the question arose whether the transfer to the trust, made pursuant to the property settlement agreement, was taxable. The court analogized to an *inter vivos* transfer and framed the issue as whether the husband had received consideration in money or money's worth in return for his promise to leave money for his daughter's support: "The property left by John for Madeline's support is free from taxation only if the circumstances indicate that he received adequate consideration for his promise to leave it to her. We come, therefore, to the question whether such consideration is present here. The executors urge that we must assume that John received consideration for his promise to support Madeline because the property settlement agreement was in writing (Civ. Code, § 1614), and that, therefore, John left the amount in question to Madeline in satisfaction of a valid obligation supported by an adequate consideration. [¶] The difficulty with this contention is the assumption that, merely because there may be sufficient consideration as between the spouses in a property settlement agreement, it necessarily follows that there is also consideration for purposes of determining whether an inheritance tax is due. This conclusion is unwarranted. While a grossly disproportionate division of property between spouses does not render the agreement void for inadequate consideration, since intangible factors as well as the property received by the parties are weighed in the balance in determining the adequacy of consideration as between spouses, the tax

consequences of the contract are another matter. (Cf. *Chemical Bank New York Trust Co.* v. *United States* (1966) 249 F.Supp. 450, 459-460.) Obviously, there are unlimited contrivances for avoidance of the inheritance tax by the device of a bequest in fulfillment of an obligation undertaken in a property settlement agreement, for which the testator does not receive a full consideration *in money or money's worth.*" (Pp. 153-154.)

This distinction between adequate consideration to enforce a *contract* and adequate consideration to relieve from inheritance *tax* liability was recognized again in *Estate of Bielec, supra,* 8 Cal.3d 213. There, two brothers were sole shareholders of a corporation and had agreed that the stock of the first brother to die would be sold back to the corporation for $100,000. Although the court agreed there was adequate consideration to enforce the contract, the court held there was inadequate consideration to relieve the transaction from inheritance taxes. "Paul first relies on a finding 'that at the time the written buy-and-sell contract was entered into on July 20, 1956,...there was adequate and full consideration for the contract.' Properly interpreted this finding supports a conclusion that the *inter vivos* agreement was enforceable as between the parties to it. It does not, however, lend any support to Paul's argument that there was adequate consideration for the purpose of determining the taxability of the *inter vivos* transfer. The concept of adequate consideration as it is used in the Revenue and Taxation Code provisions has a meaning quite distinct from that of the same term as it is used in the laws of contract. If we were to overlook the difference and employ the term interchangeably, as Paul suggests, the entire purpose of the legislative policy would be thwarted. [¶] Consideration adequate to create a binding contract is defined as '[a]ny benefit conferred, or agreed to be conferred, upon the promisor, by any other person, to which the promisor is not lawfully entitled, or any prejudice suffered, or agreed to be suffered, by such person, other than such as he is at the time of consent lawfully bound to suffer, as an inducement to the promisor,...' (Civ. Code, § 1605.) To be adequate under the taxing statue consideration must be equivalent in value to the full value of that for which it is exchanged. If it is less than equal it or a portion thereof is subjected to imposition of a tax. (Rev. & Tax. Code, § 13641.) Contrariwise, bargained-for contractual consideration is not required to be adequate in the sense of equality in value but only need represent some legal detriment not otherwise incurred. Thus section 13641 compels an application of standards considerably more stringent than those associ-

ated with a determination of contractual enforceability. (*Estate of Craycroft, supra,* 191 Cal.App.2d 436, 444-445.)" (Pp. 221-222.)

██ In the case at bar, we conclude that the decedent received no consideration reducible to a money value for the $200,000 payment. For *contract* purposes, there was sufficient consideration: Henry gave up certain rights in order to receive the payment (his directorship, his voting rights as a stockholder), and the decedent received certain intangible benefits from the payment (family harmony). Nevertheless, for *tax* purposes, the consideration was inadequate; the decedent received no money or property of monetary value. Decedent's estate was reduced in value by $200,000. The benefits which decedent received are most analogous to "love and affection," long recognized as inadequate consideration to free an *inter vivos* gift from taxation. (See *Estate of Brix* (1919) 181 Cal. 667, 674 [186 P. 135]; see also 3 Am.Jur.2d, Advancements, § 80, p. 56.)

In conclusion, we hold that the $200,000 payment to Henry is subject to inheritance taxes as an advancement.

### III.

██ *What is the value of the advancement?*
 A. *Time of valuation.*

For inheritance tax purposes, an *inter vivos* gift is valued as of the date of decedent's death. (§§ 13311, 13402, 13951.)[7] The trial court concluded that since Henry had been declared bankrupt, the assets given to him had no ascertainable value as of the date of the decedent's death. The Controller contends this method of valuation was incorrect; the value of the advancement was $200,000, whether Henry used the money profitably or not.

This argument is sound. Although it is true that "only property which exists at the time of decedent's death is subject to the [inheritance] tax" (*Estate of Parrott* (1926) 199 Cal. 107, 112 [248 P. 248]; see 23 Cal. Jur.3d, Death and Gift Taxes, § 9, p. 427), that rule is inapposite to *inter vivos* gifts. As discussed above, only *inter vivos* gifts which are akin

---

[7]In contrast, for purposes of estate distribution, an advancement is valued according to the donor's expression or, if none, as of the date of the transfer. (Prob. Code, § 1052.)

to testamentary dispositions are taxed. It is the *gift* that is taxed, not the subsequent profits (or losses) made by the donee.[8]

Where, as here, the gift is of cash, the question of time of valuation is irrelevant. The $200,000 cash gift must be given the same value on the day of death as on the date of transfer. (We are not concerned with the economic question of the purchasing power of the dollar.)

B. ▇ *Effect of gift taxes.*

In 1963, when the decedent made the gift to Henry, she also paid federal and state gift taxes thereon. In order to avoid double taxation a credit for the paid gift taxes is allowed against the federal estate tax (26 U.S.C. § 2012) and the state inheritance tax (§ 14059, repealed in 1977; see now § 14077; see *Estate of Giolitti* (1972) 26 Cal.App.3d 327, 331 [103 Cal.Rptr. 38, 56 A.L.R.3d 1307]).

The inheritance tax referee initially valued Henry's advancement at $273,693 ($200,000 gift plus the gift taxes paid thereon), but a credit was allowed for the state gift taxes ($17,683). The net result, then, was that inheritance taxes were levied on the $200,000 gift plus the *federal* gift taxes.

The trial court concluded that the federal gift tax was not an advancement to be included within the estate. The Controller challenges this conclusion and argues that the gift taxes were as much a part of the advancement as was the $200,000 payment. As noted above, the will provided: "Transferred the sum of Two Hundred Thousand ($200,000) Dollars in 1963 to my son, HENRY P. GARIN, for use in his business. I also paid the Federal and California gift taxes on this transfer. I direct that *this transfer and the amount of the gift taxes that were paid thereon shall be considered as an advancement* to my son, HENRY P. GARIN, to be deducted from the share of the estate herein provided for him. *The sum so transferred and the gift taxes which I have paid shall be considered as a part of my estate* for the purposes of division and distribution thereof, and shall be taken by said HENRY P. GARIN towards his share of the estate." (Italics added.)

---

[8]For purposes of estate distribution, neither profits nor losses on the property advanced are taken into consideration. (See 3 Am.Jur.2d, Advancements, § 66, p. 43.)

The Controller argues that as in the case of the $200,000 payment the decedent's intention was unequivocally stated; the gift taxes, like the gift itself, constituted an advancement subject to inheritance taxes under section 13647.

This contention is inferentially supported by two recent cases. In *Estate of Giolitti, supra,* 26 Cal.App.3d 327, the decedent made *inter vivos* gifts in contemplation of death (§ 13642) which were subject to both gift taxes and death taxes (estate and inheritance). The decedent died before the gift taxes were paid, and the heirs argued that the gift taxes were debts of the estate and hence an allowable deduction from the value of the estate. The appellate court disagreed. The court reasoned that gift taxes on taxable *inter vivos* transfers are essentially down payments on the estate and inheritance taxes. Since, for inheritance tax purposes, federal estate taxes are not a deductible expense, neither are federal gift taxes paid on an *inter vivos* transfer an allowable deduction.

The *Giolitti* reasoning was followed in *Estate of Schmalenbach* (1975) 15 Cal.3d 102, 106-107 [123 Cal.Rptr. 490, 539 P.2d 58]: "We consider first the aspects of the federal estate and gift tax as they bear on the state inheritance tax. The federal estate tax paid upon the death of a decedent is not a deductible debt in arriving at the clear market value for purposes of determining the state's inheritance tax base. (See *Estate of Fabris* (1962) 200 Cal.App.2d 408 [19 Cal.Rptr. 397].) When a transfer of property made prior to death results in an obligation to pay a federal gift tax it may be a transfer which nevertheless is subject to the federal estate tax as, for example, in the case of a gift made in contemplation of death. (See *Ingalls* v. *C. I. R.* (4th Cir. 1964) 336 F.2d 874, 876.) In such an instance the total federal estate tax thereby incurred is determined by reference to the total transfers including *inter vivos* transfers. The gift tax on all such transfers, however, is considered a credit against the total estate tax due and is, in effect, merely a down payment on the federal estate tax. (See *Smith* v. *Shaughnessy* (1943) 1318 U.S. 176, 179 [87 L.Ed. 690, 692-693, 63 S.Ct. 545].) As no part of the federal estate tax can be a deductible item in determining the state inheritance tax base, a fortiori the 'down payment' portion of the federal estate tax (i.e., the federal gift tax) is not deductible. To permit such a deduction 'would be to sanction the circumvention of the law which does not permit the deduction of the

federal estate tax and would authorize a deduction which is not express-ly provided for . . .' (*Estate of Giolitti, supra,* 26 Cal.App.3d 327, 332.)"

It is clear, then, that the gift taxes paid by the decedent are includ-able within the estate. The question here is whether the gift taxes are to be considered part of Henry's advancement or part of the estate as a whole. In view of the decedent's clear expression of intention, we con-clude that the gift taxes are part of Henry's advancement.

The order is reversed.

Elkington, Acting P. J., concurred.

**NEWSOM, J.**—I respectfully dissent.

The purpose of taxing certain *inter vivos* transfers under inheritance tax laws is to eliminate tax avoidance (*Estate of Thurston* (1950) 36 Cal.2d 207, 210 [223 P.2d 12]). Where the nature of the transfer is tes-tamentary, and the transfer is a substitute for disposition by will or passage by intestacy, an inheritance tax will be levied. (*Estate of Bielec* (1972) 8 Cal.3d 213, 222 [104 Cal.Rptr. 516, 502 P.2d 12, 58 A.L.R.3d 1088].)

Having these precepts in mind, I cannot agree that the "advance-ment" here was made in lieu of testamentary disposition, or was testamentary in character, since in fact it was made purely for commer-cial reasons, to promote and preserve the family business.

The higher tax is being imposed merely because, in her desire to equalize her children's distributive shares in her estate, Mrs. Garin used the word "advancement." Had she eschewed such reference, and merely made allowance for the advancement by reducing Henry's share by spe-cific bequest, no inheritance tax could be imposed on the advancement.

The higher tax, then, becomes a penalty for *describing* an act which, if it had been merely done and not labeled, could not have triggered such tax.

This is an exaltation of form over substance. I would read the subject sections as requiring that we analyze the purpose of the transfer—whatever its designation in the will—as of the time it took place in determining whether it was testamentary in nature.

I would affirm.

A petition for a rehearing was denied December 28, 1979. Newsom, J., was of the opinion that the petition should be granted. Respondents' petition for a hearing by the Supreme Court was denied January 24, 1980.