TYEER, J.,
delivered the opinion of the court.
The appellant, Julia A. M. Harrison, instituted this suit in the Circuit Court of Brunswick county, to recover a specific legacy which she claimed under the will of her grandfather, Dr. Creed Haskins. It appears from the record, that R. K. Meade, Esq., the grandfather of the appellant’s mother, had left to his granddaughter Julia, who was the daughter of Dr. Creed Haskins, a legacy, which, at the date of the decree in this cause, amounted toil,073 49, with interest on $912 66 from the 31st of December, 1848. Julia, the daughter of Dr. Creed Haskins, died before her father, and her husband, R. W. Harrison, became entitled to this debt. In 1848, Dr. Creed Haskins died, and by his will he gave-to the complainant ,the following negroes John and his wife Delilah and their in *785 crease, and added, “that it was to be distinctly ^Understood, if the appellant died under the age of twenty-one, then the said negroes were to revert to his heirs that might be then living and that the above legacy included all that legacy which came to his hands from the grandfather of his daughter Julia. He then gave to his granddaughter Ann Weldon a negro girl, and, after the payment of his debts, he gave the residue of his estate, real and personal, to his son Richard E. Haskins, and appointed the said Richard his executor. Robt. W. Harrison, the father of the appellant, also instituted a suit in the same court to recover the amount of the legacy left to his wife, the mother of the appellant; and the two suits were brought on to be heard together, and one decree pronounced in both causes.
The appellant insists, that the decree is erroneous in charging the debt due to her father on her specific legacy, and that the same was payable out of the residuum devised to Richard E. Haskins. This question may, I think, be readily determined by the application of some general and well established rules of law. A specific legacy, as to its liability for the payment of debts, bears the same relation to a residuary legacy as real estate does to personal estate; and the rule is general, that as the personal estate is the primary and natural fund for the payment of debts, it will be first implied in discharging the debts. Notwithstanding the real estate may be devised to a person upon condition of his paying debts, or be charged with debts generally, and the personal estate be disposed of by a general residuary bequest, these circumstances will not prevent the personal estate from being applied in the first instance to the satisfaction of debts, and the real estate will only be applied after the personal estate is exhausted; and the fact that real estate is charged with the payment of debts is not sufficient to exempt the personal fund. But, to accomplish that, the personal estate must be exonerated expressly or by necessary implication. See 1 Roper on Legacies, 69S. *The rule is equally well established, that a residuary legatee has no right to call on a specific legatee to pay debts — that the whole personal estate, not specifically bequeathed, must be exhausted before specific legatees can be called on to contribute anything out of their bequests. The principle being, that the testator only intended for the residuary legatee that which should remain after all the trusts of the will were performed. 1 Roper on Legacies, 411; and to vary this rule of law, the specific legacy must be charged and the residuum must be exonerated in the same clear and indubitable manner. In this case, however, so far from the residuum being exonerated expressly or by necessarj implication, it is expressly., charged with the payment of debts, and the burden thus explicitly laid on the appropriate fund for the payment-of debts, is sought to be removed by inferences not only not deducible from the language of the bequest, but rebutted by the limitation attached to it. That the testator labored under a misapprehension as to who was the owner of the debt, (or the Meade legacy as it is called,) is palpable. On no other hypothesis are the term» of the bequest sensible or intelligible. He gives a specific legacy to his granddaughter,, on the contingency of her arriving at the age of twenty-one, and should she die before that period, the legacy is to revert to his heirs living at that time; and adds, “that this bequest includes the Meade legacy.” Now we can readily understand, if the granddaughter owned the debt, or Meade legacy as it is termed, that this was intended in satisfaction of it; because this specific bequest, but for this language, would not have been in satisfaction of the debt, first, because it was of a different character, and secondly, because it was contingent — and the fact of its being contingent, shews that the testator never contemplated charging it with a debt due to any one, but only in satisfaction, for if the granddaughter had died the day after the testator, the specific legacy would have reverted to the heirs of the testator, leaving the *residuary legatee to pay the debt. It must be manifest, therefore, that the testator was mistaken, and that he supposed his granddaughter owned the debt, when, in fact, it was payable to her father; but this mistake or oversight cannot in this case affect the bequest; because a permanent rule in the construction of wills is, “that an express disposition, though probably involving an oversight or mistake by the testator, cannot be controlled by inference which is not necessary and indubitable, it being the safest course to follow the words.” See Roper on Legacies, p. 1461, vol. 2. And here there is nothing from which to deduce the inference, that the testator would not have made this bequest if he had understood who was the real owner of the debt or Meade legacy. And lastly, if there was a charge on the specific legacy and a charge on the residuum, these clauses being repugnant, the last in order would control and place the charge on the residuum. Therefore, in any point of view the decree is erroneous, and must be reversed.
FIELD, P., and CLOPTON, J., and THOMPSON, J., concurred.
DECREE.
The court is of opinion that there is error in so much of joint decree of the 20th April, 1850, rendered on the hearing of the two cases together of R. W. Harrison v. Richard E. Haskins, executor of Creed Haskins, and of Julia A. M. Harrison, an infant, by her next friend R. W. Harrison, v. Richard E. Haskins individually, and as executor of Creed Haskins, as adjudged in said last mentioned suit that the bequest to the complainant in said suit was to be taken by her subject to an abatement or I charge to the value of the debt decreed in *786 favor of Robert W. Harrison, and ordered a sale of slaves sufficient to raise the amount of said debt, and as decreed costs against the complainant. And the court is further of opinion, that the *appellant is entitled to have the slaves bequeathed to her surrendered to her guardian without abatement, and is also entitled to an account of their hires and profits; but before said slaves are surrendered, the usual refunding bond must be given, if required; and as to the residue of the decree pronounced in the first named suit, the court declines to express any opinion as to its effect on the rights of the parties litigant, the same not appearing to have been appealed from, and there being no record of the proceedings in said suit before this court. Therefore, it is decreed and ordered, that the decree above declared to be erroneous be reversed and annulled, and that the appellee do pay unto the appellant her costs by her expended in the prosecution of her appeal aforesaid here. And this cause is remanded to the Circuit Court of Brunswick county, to. be proceeded in separately and apart from the first named suit of R. W. Harrison v. Richard E. Haskins, ex’or, &c. according to the- principles herein declared.
Decree reversed.