[S. F. No. 1742.   In Bank. — March 11, 1901.]

In the Matter of the Estate of ELIZA A. TOMPKINS, Deceased.   ALBERT TOMPKINS et al., Appellants. JOHN W. THOMPSON, Executor, et al., Respondents.

ESTATES OF DECEASED PERSONS — DISTRIBUTION UNDER WILL — ADVANCES — DEDUCTION FROM SHARES — EVIDENCE — RELEASE AND RECEIPT PRIOR TO WILL. — A clause in a will, directing that the principal of owing and unpaid sums theretofore loaned by the testatrix to her children named be deducted from their respective destributive portions of the estate, and that the estate have due credit therefor, is not inconsistent with her prior release of notes given for the sums loaned, and her receipt in full of all demands or claims due from either of them, made six years before the execution of the will.   Such release and receipt, not referred to in the will, are not admissible in evidence in favor of the children named, upon distribution of the estate, to show that the amounts mentioned in the will should not be deducted from the portion of the estate to which they would otherwise have been entitled.

ID. — INTENTION OF TESTATRIX — LANGUAGE OF WILL — CIRCUMSTANCES — OVERSIGHT — LAPSE OF MEMORY. — The intention of the testatrix is to be ascertained from the language used in the will; and circumstances are to be resorted to only when there is uncertainty in the language, and only for the purpose of ascertaining the intention from the words of the will.   A mistake or oversight, resulting from the escape from the memory of the testatrix of the prior documents of release and receipt, if it could be shown, would constitute no reason for disregarding the language of the will.

ID. — CONSTRUCTION OF WILL TO MAKE IT EFFECTIVE — PRINCIPAL SUMS "OWING AND UNPAID." — The clause for the deduction of the principal of the sums loaned, "or whatever may yet be owing and unpaid," remitting all interest, is to be construed so as to give it effect, and not to render it inoperative by reason of an inference to be drawn from an instrument to which the will does not refer.   The term "owing" does not necessarily imply an enforceable obligation, and must be read as explained by the associate word "unpaid."

APPEAL from a decree of the Superior Court of Alameda County distributing the estate of a deceased person.   John Ellsworth, Judge.

The facts are stated in the opinion of the court.

Reed & Nusbaumer, for Appellants.

Metcalf & Metcalf, for John W. Tompkins, Executor, Respondent.

William R. Davis, for Mary B. Pratt, Respondent.

HARRISON, J.— Appeal from the decree of final distribution.

In the ninth paragraph of her will, executed in 1892, the testatrix disposed of the residue of her estate to her six children (naming them), share and share alike, and at the close of this paragraph made the following statement: —

"I declare that I have heretofore loaned to my son Albert Tompkins the sum and amount of four thousand dollars; to my son Ira Tompkins the sum and amount of four thousand dollars; and to my son William C. Tompkins the sum and amount of one thousand dollars, — upon all of which amounts I have and do remit interest; but I hereby will and direct that the respective amounts aforesaid, or whatever may be yet owing and unpaid by my said sons to me at the time of my death, be respectively deducted from the respective distributive portions to which they would otherwise be entitled, and my estate have due credit therefor."

William C. Tompkins, named therein, died before the testatrix.

Upon the hearing of the application for distribution, the attorney for the above-named Albert and Ira Tompkins offered in their behalf the following instrument, which had been received by them from the testatrix in 1886: —

"*My dear Sons, Albert and Ira,*— As I understand it, the question you now submit to me is one of honor, more than law. Therefore I waive all technicalities, and undertake to answer it upon the strict rules of equity.

"It is and always has been my purpose and desire to have the children share alike in the property. I have concluded, after carefully reviewing the matter, that inasmuch as the seven thousand dollars taken from the avails of the North Troy property in 1873, and at the time of your father's death charged to Tompkins Brothers, was used, together with your efforts to secure to all the heirs father's life insurance, and my title to said real estate, that it should be charged to all the heirs jointly, instead of being assumed by you two alone.

"And inasmuch as I gave to each of the other children one

thousand dollars at the time of father's death, and inasmuch as the agreement now held by me, in which you promise to pay me five thousand dollars and the note of three thousand dollars, making a total of eight thousand dollars, is really the old seven thousand dollars.

"And in consideration of the interest paid me on said eight thousand dollars, that I will cancel both said agreement and note, and do hereby so cancel them, and up to this date do hereby pass you a receipt in full of all demands or claims due me.

"May 14, '86.                                ELIZA A. TOMPKINS.

"Witness: S. FOSTER."

Upon the objection of one of the other children, the court excluded this instrument from evidence, and in its decree of distribution excluded the said Albert and Ira from any share of the estate.   From this decree they have appealed.

It is contended by the appellants that the court erred in refusing to admit in evidence the above letter from the testatrix; that this instrument was one of the "circumstances" under which the will was made, and should have been considered by the court in ascertaining her intention in the above-quoted clause of her will; that the effect of the instrument was to release the appellants from all liability to her for the money she had loaned them, and therefore the amounts of these loans should not have been deducted from the portion of her estate to which they would otherwise have been entitled.

If it should be conceded that this instrument would have been a defense to any action thereafter brought by Mrs. Tompkins for a recovery of the money thus loaned, it does not follow that it is available to qualify the language of the will.   There is no inconsistency on her part in releasing her sons from their obligation to repay the money thus loaned to them, and afterwards determining that the amounts so loaned should be treated as an "advancement," and declaring in her will that they should be deducted from the distributive portion of her estate to which they would otherwise be entitled.   The instrument of release was executed in 1886, and whatever motive may have then prompted her to give it, she was not thereby precluded from making, in 1892, such testamentary disposition of her property as she desired; and if she deemed it just or proper, for the purpose of bestowing upon each of her children an equal portion of her property, that the amounts received

by these sons should be deducted from their shares, she was at liberty to express such purpose in her will, and if so expressed, it is the duty of the court to carry it into effect. Whether such was her intention must be determined from the terms of the will itself. The will must be interpreted by the language which she has used therein, and cannot be affected by an instrument made by her several years previous, and to which she makes no reference. The circumstances under which the will is made are to be taken into view only when there is an uncertainty "arising upon the face of the will," and only for the purpose of ascertaining "from the words of the will" the intention of the testator. (Civ. Code, sec. 1318.) Even if it could be shown that her execution of the document of 1886 had escaped her memory, it would merely result that the purpose or motive for directing the deduction was produced by a mistake or oversight, and would constitute no reason for disregarding the language of her will. "It is incompetent to show by any extrinsic evidence that the testator has by his own mistake, or that of some other person, given a legacy of less value or of a different character from that which he in fact actually meant to give." (Underhill on Wills, sec. 912. See also *Harrison* v. *Haskins*, 2 Pat. & H. 388; Roper on Legacies, 1461 (8) ). In *Aird's Estate*, L. R. 12 Ch. Div. 291, the testator recited in his will that he had advanced four thousand pounds sterling to each of his sons, and directed that said sums, or so much as should not have been repaid at the time of his death, should be considered as an advancement, and deducted from his share of the estate. It was shown that this recital was erroneous, and that he had in fact advanced to one of his sons only about three thousand pounds sterling, and it was sought to charge his share with only the amount actually advanced. The court, however, held that he was bound by the recital, and that the direction to deduct the four thousand pounds sterling must be observed, saying, "If the testator was in error in the view in which he was proceeding, it appears to me that the error is binding on those who benefit under his will."

In the above clause quoted from her will, the testatrix, after declaring that she had previously "loaned" to each of the appellants the sum of four thousand dollars, expressly directs that her estate "shall have due credit therefor," and that "these amounts" shall be respectively deducted from the shares to which the appellants would otherwise be entitled,

thus making the sums loaned to them a part of the *corpus* of her estate, which she had declared in a previous portion of the same paragraph should be equally divided among her children. Her declaration remitting the interest on the amounts loaned implies that in her mind the obligation of her sons for the loans had not been removed, even though such obligation was not enforceable against them; and the use of the phrase, "I *do* remit interest," shows that in her mind this obligation existed at the time she executed the will. The parenthetic clause, "or whatever may be yet owing and unpaid by my said sons to me at the time of my death," also implies that in the mind of the testatrix these amounts were then owing and unpaid, and that some portion thereof might be paid between the date of her will and the time of her death, but that if any amount thereof should be "unpaid" at the time of her death, it should be deducted from their distributive shares. The term "owing" does not necessarily imply an enforceable obligation, and in this case must be read as explained by its associate, "unpaid." It is a fundamental rule of construction, that the words of a will are to receive an interpretation which will give to every expression some effect, rather than one which will render any of the expressions inoperative. (Civ. Code, sec. 1325.) The testatrix must have intended that this clause in her will should have some effect in the distribution of her estate, and the only purpose deducible from its language is, that she intended thereby that the shares of the appellants should be diminished by reason of these loans. It would render the entire clause inoperative if it should be held that its provisions could be defeated by an inference to be drawn from an instrument executed many years previously, and to which the will makes no reference.

The judgment is affirmed.

Temple, J., Van Dyke, J., Garoutte, J., and McFarland, J., concurred.