[Civ. No. 23262.   Second Dist., Div. One.   Apr. 1, 1959.]

Estate of JANE C. NIELSEN, Deceased. EMIL H. NIELSEN, as Executor, etc., Respondent, v. ELINOR H. HANNAFORD, Appellant.

F. Donald Sokol for Appellant.

Delger Trowbridge and Trevey, Schwartz & Wood for Respondent.

WHITE, P. J.—Emil H. Nielsen, as executor of the last will of Jane C. Nielsen, his deceased mother, petitioned the court for instructions, alleging that among the assets of said estate are promissory notes of decedent's daughter, Elinor N. Hannaford, one dated October 5, 1948, payable on or before testatrix' death and the other dated October 14, 1948, payable October 14, 1968, both secured by a deed of trust of certain real property; that said executor is informed that appellant contends that, by the terms of her mother's last will and codicil, appellant is not required to pay the executor any portion of the amounts of the unpaid principal or interest on her said promissory notes to her mother; and said executor prays that the court instruct him.

The pertinent provisions of the will dated September 1, 1944, are quoted below:

"NINTH: . . . I hereby give, devise and bequeath an undivided one-fifth (1/5) share in all the rest, residue and remainder of my estate, both real and personal, of whatsoever kind and nature to the children of my son Emil H. Nielsen, who are living at the time of my death, share and share alike, *less any indebtedness of their father, Emil H. Nielsen, owing at the time of my death for moneys borrowed from me or advanced by me to my said son.*" (Emphasis added.)

"TENTH: All of the rest, residue and remainder of my estate, both real and personal, of whatsoever kind and nature, I do hereby give, bequeath and devise in equal shares to my children FRED A. NIELSEN, VICTOR W. NIELSEN, ELINOR C. HANNAFORD and ALICE J. LANE, *provided, however, that if at the time of my death any of my said children shall be indebted to me for moneys borrowed from me, or if prior to my death I shall have made any gift of property to any of my said children,* there shall first be deducted from the respective share of each such child the amount of such indebtedness or the value of any such gift, which shall be divided among my other children and the children of Emil H. Nielsen per stirpes, . . . ." (Emphasis added.)

Decedent's fifth codicil to her will of September 1, 1944, was made April 19, 1949 and reads as follows:

"*Any moneys advanced by me including loans and gifts,* to any of the legatees mentioned in my will, *whether before or after the date of this codicil,* shall be deducted from the share that such legatee or legatees would take if there had not been any such advances made by me, *whether or not such advances*

*constitute at the time of my death valid causes of action in my
favor against such legatee or legatees."* (Emphasis added.)

This appeal was taken from the "Findings of Fact, Con-
clusions of Law, and Decree of Instructions" made and
entered February 17, 1958. The portions thereof pertinent to
the instant appeal are as follows:

FINDING III. "That it is true that said decedent did not
intend by the provisions of paragraph TENTH of her Last Will
and Testament and by the provisions of said Codicil to said
Last Will and Testament of April 19, 1949, to convert the
loans to said ELINOR N. HANNAFORD into advancements; that
said decedent did not by the use of the words 'advanced' and
'advances' in the Codicil of April 19, 1949, and by the balance
of the language contained in said Codicil of April 19, 1949,
intend to convert the indebtedness of ELINOR N. HANNAFORD
to decedent into advancements; the words 'advanced' and 'ad-
vances' as used in said Codicil of April 19, 1949, were used
in the sense of 'loans of money' and not in the sense of 'ad-
vancements.' "

CONCLUSION I. "The Executor of the above entitled estate,
EMIL H. NIELSEN, should be and he is hereby instructed to
collect the full amount of said promissory notes of ELINOR N.
HANNAFORD, thereinabove described, including all past due
interest, as soon as possible."

Appellant urges that the provisions of the testamentary in-
struments transformed her indebtedness to decedent into ad-
vancements subject to the rule laid down in section 1051 of
the Probate Code that "If the amount of such advancement
exceeds the share of the heir receiving the same, he must be
excluded from any further portion in the division and dis-
tribution of the estate, but he shall not be required to refund
any part of such advancement."

Respondent executor, in his brief, states that "the law is
so well discussed and the correct conclusion is so well argued
in the trial court's 'Memorandum of Opinion' dated Decem-
ber 20, 1957, . . . that we quote it here verbatim as our exposi-
tion of the law applying to this case."

From said memorandum of opinion, we quote the follow-
ing portion which is pertinent to the instant appeal: ". . . A
close study of Mrs. Hannaford's (appellant) brief and cases
cited therein convinces me that she is confused as to the
difference in meaning between the words 'advance' and 'ad-
vancement.' Since the will and the codicil in question were
both prepared by an attorney, both counsel agree that section

106 of the Probate Code applies and that 'technical words are to be taken in their technical sense.' The word 'advance' as ordinarily used means 'a loan of money' (see *Brock* v. *Fidelity & Deposit Company*, 10 Cal.2d 512 [75 P.2d 605]). The word 'advancements' is a technical word meaning 'a perfect and irrevocable gift made by a parent during his lifetime to his children intending that gift to be a part or the whole of that portion of the parent's estate to which the child will be entitled upon the death of the parent.' (See 2 Cal.Jur. 2d 482 and cases cited therein.)

"I do not feel, from all of the evidence before me, that the testatrix intended to include the loans with the advancements by using the word 'advances.' Had she so intended and in view of the fact that her codicil was prepared by an experienced attorney, it would have been most simple for her to so provide, and in my opinion this she has not done. It should be emphasized that during her lifetime she collected almost regularly the principal and interest payments and never permitted the secured notes to become outlawed by reason of the statute of limitations.

"For the reasons briefly stated the Executor of the above Estate is instructed to collect the full amount of said notes from Mrs. Hannaford including all interest."

Said memorandum of opinion appears in the clerk's transcript and it also constitutes the respondent's brief, with the addition at the end thereof of the argument next hereafter quoted : "The main thing we are trying to ascertain in cases of this kind is the *intention of the testatrix*. This is usually determined from the words of the testamentary instrument together with the surrounding circumstances.

"Here as the trial court well pointed out the testatrix was not dealing with 'advancements' but with 'advances' and this is where appellant's counsel has become confused.

"This is made clear by the undisputed facts that the testatrix here collected all of the monthly installments of interest as they fell due and never forgave or allowed any portion of the principal or interest of the two notes to become outlawed."

While the document entitled "Findings of Fact, Conclusions of Law, and Decree of Distribution," from which the instant appeal was taken, includes no mention of any ambiguity (or absence thereof) in the testamentary documents, the memorandum of opinion, in accordance with which counsel for the executor was directed to "prepare, serve and file his notice," includes the following : "As I view the situation

herein there is no ambiguity as such but only a failure to state specifically whether the loans in this case are to be repaid in full or only to the extent of Mrs. Hannaford's inheritance.''

The record before the court on the instant appeal includes the reporter's transcript of testimony taken over the objection of appellant and subject to her motion to strike, which was taken under submission at the end of the trial in November. No formal ruling thereon appears in the record. However, at the hearing in March of appellant's motion to vacate the document entitled ''Findings of Fact, Conclusions of Law, and Decree of Instructions,'' appellant called attention to the court's failure to rule upon her motions to strike, and the following proceedings were had:

''The Court: If it will clarify the matter at all, on this point I placed no reliance, upon the testimony of Mr. Nielsen, because it had nothing to do,—I took rather complete notes at the time I granted your Motion to Strike Trowbridge's testimony.

''Mr. Sokol (appellant's attorney) : Right.

. . . . . . . . . . . .

''The Court : If I didn't the motion is at this time, granted. I placed no reliance upon it at all.

''Mr. Sokol : The objection is sustained?

''The Court : That is correct.

''Mr. Sokol : And as I understand it, the Court's decision is based upon the language of the Will?

''The Court : Yes, and the other admissible evidence before us. There is other admissible evidence, Mr. Sokol.

''Mr. Sokol : But,——

''The Court : No—I am in error—excuse me. It is as you have stated—based upon the interpretation of the four corners of the will.''

This court is convinced, as was the trial court, that the language of the testamentary documents now being considered by us is clear and unambiguous. Therefore, as indicated in the above quoted language of the trial court the instructions given to the executor must be ''based upon the interpretation of the four corners of the Will.'' (*Estate of Salmonski*, 38 Cal.2d 199, 214 [238 P.2d 966].)

The function of the court is to ascertain the testatrix' intention as expressed in her will and codicil and, if lawful, give it effect. (*Estate of Beldon*, 11 Cal.2d 108, 112 [77 P.2d 1052] ; *Estate of Lefranc*, 38 Cal.2d 289, 296, 298 [239 P.2d 617].)

■ As stated by the court in *Estate of Northcutt,* 16 Cal. 2d 683, 690 [107 P.2d 607], ". . . where the construction given to an instrument by a trial court is reasonable and appears to be consistent with the intent of the party making it, courts of appellate jurisdiction will not substitute another interpretation, even though it may seem equally tenable with that accorded by the trial court."

■ However, an appellate court is not bound by a construction of a will based solely upon its terms without the aid of evidence. "Under these circumstances, there is no issue of fact, and it is the duty of an appellate court to make the final determination in accordance with the applicable principles of law." (*Estate of Platt,* 21 Cal.2d 343, 352 [131 P.2d 825]; *Estate of Wunderle,* 30 Cal.2d 274, 280 [181 P.2d 874]; and *Estate of Fleming,* 31 Cal.2d 514, 523 [190 P.2d 611].)

Therefore, the real question to be determined on the instant appeal is whether, by the terms of her will and codicil, testatrix intended to and did convert her loans to appellant (evidenced by promissory notes and a trust deed of real property) into an "advancement."

Paragraphs IX and X of testatrix' will made in 1944 do not provide identical treatment as to all legatees, paragraph IX leaving gifts to the children of the executor from which are to be subtracted only debts of the executor "owing at the time of my death," while paragraph X leaves the residue to testatrix' four other sons and daughters from which are to be subtracted any indebtedness of said donees to her at the time of her death and any gifts made by her to the respective donees.

Testatrix' codicil made in 1949 expresses her intention that all "loans and gifts" to any of the legatees mentioned in her will whether such loans or gifts were made "before or after the date of this codicil" shall be deducted from their respective shares of her estate *"whether or not such advances constitute at the time of my death valid causes of action in my favor."*

■ No gift may be taken as an advancement or as an ademption of a general legacy unless such intention is expressed in the writing of the testator or the donee. (Prob. Code, § 1050.) ■ No certain words or form of writing is required to constitute an advancement, rather than a gift or loan, so long as the writing was done by the decedent and shows that the intent was to charge such gift or loan against the portion of the estate which the donee or debtor would

otherwise have taken under the will or the laws of succession. (*Estate of Rawnsley*, 94 Cal.App.2d 384, 387 [210 P.2d 888] ; 2 Cal.Jur.2d 485, and cases there cited.)

In *Estate of Hayne*, 165 Cal. 568 [133 P. 277, Ann.Cas. 1915A 926], three of testatrix' sons appealed from a judgment that the fourth son, declared by testatrix in her will to have received from her "by way of advancement" certain lands and "at various times certain loans, notes for which I have cancelled," constituting "more than what would be his share of my estate," should share with them in the portion of the estate as to which decedent died intestate. The judgment was reversed, the Supreme Court making the following statements concerning advancements :

". . . It will be sufficient if it appears that the writing was done by the decedent and shows the intent to charge the money or property given as an advancement . . . There could be no written evidence of the intent to charge an advancement more convincing than an express statement to that effect in the last will of the decedent." (P. 573.)

". . . It is, of course, true, that, as a general rule, advancements made before the will was executed cannot be considered in making distribution of the estate. . . . But this rule has no place, and reasonably could have none, where the terms of the will itself show the contrary. . . .

"Respondent also invokes the rule followed in many decisions, and which we do not here dispute, that it is the intention of the decedent at the time the property is transferred to the heir apparent that determines whether it is an advancement or a gift . . . (Citing cases.) These decisions, however, all qualify the rule by the additional statement that if the subsequent declaration is contained in a legally executed and probated will, it is competent evidence of the advancement and must prevail. Obviously this must be so, since it then, in effect, becomes a part of the testamentary disposition of the estate, and is evidence of the original intent. (See *Estate of Tompkins*, 132 Cal. 175 [64 P. 268].)" (Pp. 574-575.)

In *Estate of Vanderhurst*, 171 Cal. 553, 556 [154 P. 5], where testator in his will provided that "advances" made by him to certain of his beneficiaries as "shown by my books of account" and "advances" to other beneficiaries "represented by their promissory notes now in my possession" were to be deducted from the respective shares of such beneficiaries, it is said : "The language of the will very aptly limits and specifies funds to be charged with payments made in the testator's

lifetime as advancements . . . By no method of construction which we are able to discover may the language be given any other meaning.''

Likewise, in *Estate of Tompkins,* 132 Cal. 173 [64 P. 268], testatrix' statement in her will that money had been ''loaned'' to certain sons and should be deducted from their respective shares was held to convert said loans into ''advancements'' and to prevent their taking of any portion of her estate even though said loans had been outlawed and uncollectible for many years.

*Estate of Dodge,* 9 Cal.App.2d 650 [50 P.2d 839], was a proceeding by an executor for instructions that a loan of decedent to his wife (evidenced by her promissory notes and a trust deed of real estate) was not an ''advancement'' and should be collected by him. The will provided that ''if at the time of my death, I shall hold the written obligation for the payment of money to me of any beneficiary under this will . . . such obligation . . . shall be treated as an advancement in the distribution of my estate . . . .'' The decree that the notes constituted an advancement to the wife under the will and that the executor ''cannot require payment of the notes'' was affirmed.

■ In the instant action, testatrix' failure to use the word ''advancement'' in her codicil does not conclusively establish an intent by her that her loans to her sons and daughters were not to be treated the same in every respect as her gifts to them and/or other sons and daughters. Her intention is the determining factor, and it is to be determined from her own words used in her said will and codicil. (*Estate of Marre,* 18 Cal.2d 184, 188 [114 P.2d 586]; *Estate of Peabody,* 154 Cal. 173, 178 [97 P. 184].) ■ Her intention is not to be ascertained by isolating from the context of said will and/or codicil any certain term or terms used by her, or by her failure to use therein any certain word or words, but from the construction of said testamentary instruments as a whole and together, so that all of their provisions may be given effect. (*Moore v. Wood,* 26 Cal.2d 621, 629 [160 P.2d 772]; 2 Cal.Jur.2d 485 and cases there cited; *Estate of Hayne, supra.*)

■ From the language of the codicil now engaging our attention, hereinbefore quoted at length, it is clear that testatrix intended to and did direct that any and all gifts made by her to the legatees shall be deducted from their respective shares of her estate. Therefore, such gifts are ''advancements'' under the provisions of section 1050 et seq. of the Probate

Code of California. Testatrix' direction for such deduction is that "any moneys advanced by me including loans and gifts" shall be deducted. The language clearly expresses testatrix' intention that loans and gifts be treated in exactly the same manner. The gifts being advancements, the loans are also advancements. The testatrix' direction for such treatment of "loans and gifts," "whether or not such advances constitute at the time of my death valid causes of action in my favor against such legatee or legatees," in our opinion, was a clear expression of testatrix' intention that the secured notes of appellant were to be placed in the same category with all gifts or unsecured or outlawed loans made by her to the other legatees.

Appellant's obligations to testatrix, by the express terms of said codicil, have been converted into "advancements," and, as such, must be taken by appellant toward her share of decedent's estate. If the amount of such advancement exceeds appellant's share, she "must be excluded from any further portion in the division and distribution of the estate," but she "shall not be required to refund any part of such advancement." If the amount so received is less than her share, she is entitled to so much more as will give her her full share of the estate of the decedent. (Prob. Code, § 1051.)

In the absence of any showing that the estate in the hands of the executor is insufficient to pay the decedent's debts and the costs of administration, appellant should not be required to pay to the executor all or any portion of said advancement to her. The decree is reversed and the cause remanded with instructions to the court below that the executor be instructed in accordance with the views herein expressed.

Fourt, J., and Lillie, J., concurred.