17 Cal.App.3d 247 (1971)
94 Cal. Rptr. 524
Estate of GEORGE LACKEY, Deceased.
ETHEL MONTGOMERY, as Executrix, etc., et al., Petitioners and Appellants,
v.
MAURINE BARCAL, Objector and Appellant.
PATRICIA CARSON, Objector and Respondent.
BERTHA CLIFTON, Claimant and Appellant.
Docket No. 37483.
Court of Appeals of California, Second District, Division Three.
April 28, 1971.
*249 COUNSEL
Miller & McKechnie, Robert Clifton and James A. McKechnie for Petitioners and Appellants and for Claimant and Appellant.
Gilbert, Thompson, Kelly, Crowley & Jennett, William D. Jennett and Jean Wunderlich for Objector and Appellant and for Objector and Respondent.
*250 OPINION
COBEY, Acting P.J.
These are cross-appeals challenging the incongruous result that two inter vivos gifts by a testator, George Lackey, to two of his predeceased wife's cousins in the amounts of their legacies had different legal consequences. As regards Mrs. Maurine Barcal the trial court found that her legacy of $20,000 in George Lackey's will was adeemed by the lifetime gift to her of this amount. As regards Mrs. Patricia Carson, the court found that the lifetime gift to her of $10,000, the amount of her legacy in George Lackey's will, did not have this effect. This result occurred because the court concluded that as regards Mrs. Barcal the requirements of Probate Code section 1050 for an ademption had been met, but that with respect to Mrs. Carson they had not.

BACKGROUND
On August 14, 1956, George and Lavina Lackey, husband and wife, made reciprocal wills under which the estate of each was left to the other. In the event the spouses died about the same time or in the event the spouse, who would have received the estate of the other, predeceased the other, each will provided for general legacies in various amounts to certain specified relatives of the spouses and residual devises and bequests to other specified relatives. Among the general legacies were five to Lavina's cousins. These were $20,000 to Mrs. Barcal, $10,000 apiece to her daughter Mrs. Carson and Walter Condon and $5,000 apiece to Frances Bartlett and Ethel Young.
On March 10, 1966, Lavina Lackey died. In July, September and October of 1966 George Lackey delivered checks in the amounts of the aforementioned legacies to each of Lavina's aforementioned five cousins named in the Lackeywills.[1] He handed Mrs. Barcal the checks to herself and her daughter, Mrs. Carson and apparently mailed the others to the payees named therein. Apparently he made no written explanations of these gifts to the recipients.
Following the death of George Lackey on April 16, 1969, proceedings were instituted for the probate of his will and the administration of his estate thereunder. In September of 1969 counsel for his personal representatives prepared and obtained from Walter Condon, Ethel Young and Frances Bartlett written acknowledgements that the monies George Lackey had given them in 1966 following his wife's death were "an advancement *251 of the legacy made to me in the will of George Lackey, dated August 15, 1956."[2] They were, however, apparently unable to obtain these from Mrs. Barcal and Mrs. Carson.

MRS. BARCAL'S LEGACY
(1a) Probate Code section 1050 provides in pertinent part that a gift before death shall be considered as an ademption of a general legacy, but that this result shall not obtain unless the testator expresses such an intention in writing, or unless the donee acknowledges it in writing to be such. No contention is made that George Lackey expressed such an intention in writing with regard to Mrs. Barcal's legacy of $20,000 specifically. The trial court based its conclusion of ademption on its interpretation of a letter which Mrs. Barcal wrote to George Lackey on or about August 24, 1966, probably about a month after she received her check. In this letter she asked him what he thought of the idea of her setting aside $1,000 apiece (from the proceeds of this check) for her two granddaughters to be given to them on their eighteenth birthdays as something which Lavina had left directly to them. She proposed this as something Lavina would have wanted and alluded to the fact that "this will was made before the children [the granddaughters] were born."
On the witness stand Mrs. Barcal admitted that in this letter to George she impliedly referred to the $20,000 he had either given her or was about to give her. She also admitted that George had shown her a copy of Lavina's will and that she was aware that all of Lavina's property had been left to George by Lavina's will. She further admitted that she had had an opportunity to examine George's will but she did not state when and if she availed herself of this opportunity.
From the foregoing evidence the trial court apparently inferred that at the time Mrs. Barcal wrote her letter of August 24, 1966, to George Lackey she was aware of the contents of both Lackey wills and that George's check to her was in satisfaction of his legacy in this amount to her in his will. On this basis the trial court concluded that her letter to him constituted an acknowledgement of this intention on his part.[3]
(2) Under Probate Code section 1050 the written acknowledgement of *252 a donee is apparently not required to be in any special form or words. (See Estate of Hayne, 165 Cal. 568, 573 [133 P. 277]; Estate of Nielsen, 169 Cal. App.2d 297, 303 [337 P.2d 87]; Estate of Hoefflin, 176 Cal. App.2d 619, 629 [1 Cal. Rptr. 642].) (1b) The trial court's conclusion that the legacy to Mrs. Barcal had been adeemed was based not merely on her letter to George Lackey itself but also on the extrinsic evidence she gave at the trial.
(3) The trial court's interpretation of Mrs. Barcal's letter to George Lackey is not binding on us, however, since there is no conflict in the extrinsic evidence admitted in aid of its interpretation. (Parsons v. Bristol Development Co., 62 Cal.2d 861, 865 [44 Cal. Rptr. 767, 402 P.2d 839].) (1c) It is true that conflicting inferences may be drawn from this evidence, but if we accept Mrs. Barcal's knowledge of the situation at the time she wrote the letter as being that apparently inferred by the trial court and already recounted by us, we still have the problem that Probate Code section 1050 required her to acknowledge in writing that George Lackey intended by his gift to her to adeem the legacy to her in his will. Regardless of her knowledge of the situation, there is no expression to this effect in her letter to him. The letter, so far as here relevant, is concerned only with proposed future gifts to her granddaughters of a part of the money George had given her. The only reference to a will in the letter is, from the context in which the reference was made, clearly to Lavina's will and not to George's will which is not even mentioned. Under these circumstances we hold that Mrs. Barcal's letter to George did not constitute the written acknowledgement required by Probate Code section 1050.

MRS. CARSON'S LEGACY
(4) On the issue of whether an ademption of Mrs. Carson's legacy occurred, cross-appellants contend primarily that a letter from the aforementioned Walter Condon to one of their counsel offered in evidence by them should have been admitted under Evidence Code sections 1505, 1230 and 240, subdivision (a)(4).[4] This letter states that Walter Condon had thrown away a letter which George Lackey had sent him along with the check for $10,000 and that in the lost letter George had said "he was paying us what the will stated before it was probated." Assuming for the sake of discussion without so deciding that this letter was admissible under the aforementioned provisions of the Evidence Code, we do not believe that the language we have quoted can be construed under Probate Code section *253 1050 as a written expression that George Lackey intended that his checks to his deceased wife's cousins adeemed their legacies in his will. We say this because his statement was that "he was paying us what the will stated before it was probated." The only will that met this description at the time of this statement was Lavina's will and the statement, reasonably construed, meant merely that he was making advance payments to his wife's cousins of the legacies contained in her will. He made no reference to his own will but only to her will and therefore the statement cannot be interpreted as expressing his intention to adeem the legacies to these people contained in his own will.[5]
The main other written evidence offered by cross-appellants and refused admission as against Mrs. Carson were the four checks to the four other cousins of Lavina made legatees in the Lackey wills.[6] These checks and the one to Mrs. Carson as well were merely the means by which George Lackey made his inter vivos gifts. They indicated nothing regarding his intention in making the gifts and therefore could not meet the pertinent requirement of Probate Code section 1050.
The remaining evidence offered by cross-appellants and refused admission by the trial court was entirely oral evidence. Oral evidence of a testator's intention in making lifetime gifts is not admissible under Probate Code section 1050. (See Estate of Rawnsley, 94 Cal. App.2d 384, 386-387 [210 P.2d 888].)
We regret that in this case the apparent intention of the testator George Lackey[7] has been defeated by reason of his failure to comply with the pertinent requirements of Probate Code section 1050. (5) These requirements, *254 however, are statutory law of long standing and as such may not be changed by the courts.
The order finding an ademption of Maurine Barcal's legacy is reversed; the order making a contrary finding as regards the legacy of Patricia Carson is affirmed.
Schweitzer, J., and Allport, J., concurred.
NOTES
[1] The five cancelled checks were admitted in evidence only against their respective payees.
[2] These receipts were received in evidence only against their makers.
[3] We do not attach any particular significance to the consequence that if Mrs. Barcal's legacy was not adeemed she would receive more from George Lackey's estate than his blood relatives. It is true that during the last three years of his life George had dinner every night and often lunch as well at the home of one of his surviving sisters, but he spent every Thanksgiving and Christmas, save one, with Mrs. Barcal's family for 45 or 50 years.
[4] They assert that this letter should have been admitted as secondary evidence of a lost declaration against the pecuniary interest of the declarant who was unavailable to give in-court testimony.
[5] There is nothing in the record indicating that any of Lavina's five cousins, aside from Mrs. Barcal, were familiar with both Lackey wills and therefore knew, when they received the checks from George Lackey in 1966 following Lavina's death, that reciprocal Lackey wills existed leaving everything to the surviving spouse with contingent gifts over to specified relatives of the spouses.
[6] Cross-appellants also offered in evidence against Mrs. Carson the previously mentioned receipts from Walter Condon, Ethel Young and Frances Bartlett acknowledging the ademption of their legacies in George Lackey's will and a letter from Ethel Young to George Lackey mailed May 31, 1967 in which she thanked him "for the inheritance." The trial court refused to admit these receipts and this letter against Mrs. Carson. We hold that the trial court was correct in so ruling since none of this proffered evidence pertained to Mrs. Carson.
[7] About a month before his death in 1969 George Lackey duly executed a codicil to his 1956 will in which he changed his personal representatives. By means of this codicil John Carson, the husband of Patricia Carson, was removed as a substitute executor.