Filed 1/7/20

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| BENITA SACHS, as Trustee, etc.,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>AVRAM M. SACHS,<br><br>    Defendant and Appellant. | 2d Civil No. B292747<br>(Super. Ct. No. 18PR00032)<br>(Santa Barbara County) |

Probate Code[1] section 21135 provides that transfers of property to a person during the transferor's lifetime will be treated as an at death transfer to the person under certain conditions. All of these conditions require a writing. Here we decide that the transferor's record of amounts he periodically distributed to his children is a writing that satisfies the requirements of section 21135.

Avram M. Sachs appeals from the probate court's order granting a petition for instructions. (§ 17200.) The order

---

[1] All further statutory references are to the Probate Code unless otherwise specified.

allowed the trustee (his sister, Benita Sachs) to treat lifetime gifts to trust beneficiaries as advances on their inheritances. We affirm.

FACTUAL AND PROCEDURAL HISTORY

David L. Sachs had two children, Benita and Avram.[2] David established a trust in 1980 when Benita was 20 years old and Avram was 12. The trust provided for small distributions to other beneficiaries, but most of the trust corpus would be distributed to Benita and Avram equally on David's death. David was the original trustee.

In 1989 David began to keep track of money distributed to his children on papers he referred to as the "Permanent Record." When a child asked for money, David would tell the child that the distribution would be reflected on the Permanent Record.

In June 2013 David began to experience cognitive problems due to a stroke. He hired Ronda Landrum as his bookkeeper to help manage his finances. At David's instruction Landrum continued to make distributions to Avram and Benita. Landrum said David was adamant that she keep a record of the distributions. After a distribution was made David would often confirm that the distribution was on the list. Landrum kept a list for each child in the form of an electronic spreadsheet. David told Landrum on more than one occasion that keeping the list was important so that payments made to his children could be deducted from their respective inheritances.

In October 2013 David resigned as trustee and Benita became the successor trustee. Following her appointment,

_____

[2] We refer to all parties by their first name for ease of identification. No disrespect is intended.

she found the Permanent Record among her father's papers. The record consists of a separate file for each child. The entries were made entirely in David's handwriting. The papers list the dates and the amounts distributed beginning when each child attained age 30. The entries were not all made with the same pen, and the papers were of different types and ages.

In September 2014 Landrum advised the children that expenditures for David's residential care and payments to the children were depleting the trust at a rapid rate. Avram continued to ask Benita for distributions from the trust. Benita's resistance caused friction between the siblings. In a series of e-mails Avram sought to assure Benita by repeatedly stating that the distributions would go on his record. One of the e-mails acknowledged that previous distributions made by David went on his record.

In October 2015 Benita learned that Avram was contending the Permanent Record did not exist or that he was not bound by it. By then, David's mental condition had deteriorated to such an extent that he could not be asked about his intention in creating the Permanent Record.

After David's death, Benita filed this petition for instructions to equalize the distribution of assets from the trust. She claimed that the disparity in lifetime distributions in favor of Avram should be deducted from Avram's distributive share of the trust. The trial court granted the petition, and found that Avram received $451,027 more than Benita in lifetime distributions.

DISCUSSION

Section 21135, subdivision (a) provides in part: "Property given by a transferor during his or her lifetime to a person is treated as a satisfaction of an at-death transfer to that

3

person in whole or in part only if *one* of the following conditions is satisfied:  [¶] (1) The instrument provides for deduction of the lifetime gift from the at-death transfer. [¶] (2) The transferor declares in a contemporaneous writing that the gift is in satisfaction of the at-death transfer or that its value is to be deducted from the value of the at-death transfer. [¶] (3) The transferee acknowledges in writing that the gift is in satisfaction of the at-death transfer or that its value is to be deducted from the value of the at-death transfer."  (Italics added.)

*Subdivision (a)(2) has been satisfied*

No special form or even the decedent's signature is necessary to satisfy the writing required by section 21135, subdivision (a)(2).  (*Estate of Nielsen* (1959) 169 Cal.App.2d 297, 303.)  Here, the trial court could reasonably conclude that the Permanent Record is sufficient to satisfy the writing requirement.  The writing is in David's hand and appears to be contemporaneous.  The court noted David used different pens and the papers on which the notations were made were of various ages.  As the court stated, "The existence of [David's] record, in and of itself is highly persuasive . . . ."  In fact, keeping such a record would seem to have no purpose other than to equalize distributions between David's children.

Avram cites *In re Estate of Vanderhurst* (1915) 171 Cal. 553, for the proposition that unsigned ledgers alone are categorically insufficient to establish a donor's intent to treat lifetime transfers as advancements.  In *Vanderhurst* the testator died leaving several children.  His will provided that sums paid to a son and his children as shown by testator's books of accounts shall be treated as advancements.  The court held the trial court erred in treating the amounts paid to his two daughters as shown

4

in testator's books of accounts as advancements, based on the language of the will.  *Vanderhurst* is simply a case involving the construction of a will.  It does not stand for the proposition that unsigned ledgers alone are categorically insufficient to establish a donor's intent.

Avram argues the Permanent Record was not properly authenticated.  There is no particular requirement for how a writing is authenticated.  (Evid. Code, § 1410.)  The trial court's finding that sufficient foundational facts were shown is reviewed for abuse of discretion.  (*Ramos v. Westlake Services LLC* (2015) 242 Cal.App.4th 674, 684.)  Benita's testimony that she found the Permanent Record among her father's papers, and that the record is in her father's hand is sufficient.  There was no abuse of discretion.

*Parole evidence was properly admitted to interpret the writing*

Avram argues the trial court erred in considering parole evidence of David's intent.  If parole evidence was necessary, the court did not err in considering it.

Section 21102, subdivision (c) provides that extrinsic evidence is admissible, to the extent otherwise authorized by law, to determine the intention of the transferor.  The subdivision applies to a will, trust, deed, or any other instrument.  (§ 21101.)  Such extrinsic evidence includes parole evidence.  (*Estate of Karkeet* (1961) 56 Cal.2d 277, 283 [trial court erred in excluding testimony to aid in interpreting will].)  Nothing in the language of section 21135, subdivision (a)(2) indicates that the writing required by that subdivision is an exception to the rule allowing parole evidence to aid in interpreting a writing.

Avram refers us to what he considers the legislative history of section 21135, consisting of reports by the California

Law Revision Commission (CLRC) calling for the relaxation of requirements for proving an advancement by repealing section 21135. An attorney responding to the report opposed repealing section 21135, and recommended an amendment to the section eliminating the need for a writing to prove an advancement. Avram argues the Legislature's failure to adopt the attorney's proposed amendment shows that it rejected the use of parole evidence in the context of section 21135.

That the Legislature ignored the report and comment says nothing about legislative intent. No member of the Legislature is required to read a CLRC report, much less consider a private attorney's comment on it. Moreover, the report and comment recommended eliminating the requirement of a writing to prove an advancement. They say nothing about the use of parole evidence to explain the writing required by section 21135, subdivision (a)(2).

Nor do the cases on which Avram relies convince us that parole evidence is not admissible to explain the writing. In *Estate of Rawnsley* (1949) 94 Cal.App.2d 384, 387, no writing was offered into evidence. The only evidence offered to show the testator intended an advancement was parole evidence. The court's statement that parole evidence is excluded must be read in that context. *Rawnsley* does not hold that parole evidence cannot be admitted to authenticate and explain a writing.

In *Estate of Lackey* (1971) 17 Cal.App.3d 247, a husband and wife made reciprocal wills. The wills provided for gifts to specified relatives upon the death of the survivor. Wife predeceased husband. After wife died, husband distributed checks to the relatives named in the wills in the amounts specified in the wills. On husband's death, his personal

6

representative claimed the checks were advances of the amounts specified in his will. Most of the beneficiaries acknowledged in writing that the gifts were advances, but two of the beneficiaries did not. Husband's personal representative sought to introduce evidence of a letter from husband to the beneficiaries stating husband was paying the beneficiaries what wife's will "'stated before it was probated.'" (*Id*. at p. 252.) The Court of Appeal stated that the letter, assuming it was admissible, was not evidence of husband's intent to make advances from amounts stated in his will, because it referred only to his wife's will; that the checks indicated nothing of his intent to make advancements; and that oral evidence was not admissible. (*Id*. at pp. 252-253, citing *Estate of Rawnsley*, *supra*, 94 Cal.App.2d 384.) In so holding the Court of Appeal acknowledged its holding defeated husband's intent. (*Lackey*, at p. 253.)

Avram's reliance on *Lackey* is misplaced. Assuming, as the Court of Appeal did, that the letter was admissible for the truth of the matter, the letter stated husband was making payments under wife's will, not his own. Moreover, the court cited *Rawnsley* for the principle that parole evidence is inadmissible to determine the testator's intent to make advancements without noting that the only evidence offered in *Rawnsley* was parole and that there was no writing to interpret. The holding in *Lackey* violates sections 21101 and 21102, subdivision (c), allowing extrinsic evidence to determine the intent of the transferor. We decline to follow *Lackey*.

*Subdivision (a)(3) has been satisfied*

Avram contends the e-mails he sent to Benita do not constitute sufficient evidence to satisfy section 21135, subdivision

7

(a)(3), that "[t]he transferee acknowledges in writing that the gift is in satisfaction of the at-death transfer." We disagree.

Avram argues the statement in his e-mails that "it goes on my record" is too amorphous to constitute an acknowledgement. But Avram's argument is based on the claim that parole evidence is inadmissible. We have rejected that argument.

The statement ("it goes on my record") was made in the context of Avram's request for distributions from the trust. Given the context, the trial court could reasonably conclude the e-mails constitute a written acknowledgement that the distributions are advancements.

Avram argues that he never gave such an acknowledgement to David. But subdivision (a)(3) does not require that the acknowledgment be contemporaneous with the advancement. An acknowledgment that a distribution goes on Avram's record as an advancement can reasonably be construed as an acknowledgment that prior distributions reflected on the record were also advancements.

*The court properly found a disparity in payments*
*between the parties*

Avram contends Benita failed to demonstrate there is a disparity between amounts given to Avram and Benita. We again disagree.

Avram's argument is based on a view of the evidence most favorable to himself. But that is not how we view the evidence. We look only to the evidence supporting the prevailing party. (*GHK Associates v. Mayer Group, Inc.* (1990) 224 Cal.App.3d 856, 872.) We reject evidence unfavorable to the prevailing party as not having sufficient verity to be accepted by

8

the trier of fact.  (*Ibid*.)  Where the trier of fact has drawn reasonable inferences from the evidence, we have no power to draw different inferences.  (*McIntyre v. Doe & Roe* (1954) 125 Cal.App.2d 285, 287.)  The trier of fact is not required to believe even uncontradicted testimony.  (*Sprague v. Equifax, Inc.* (1985) 166 Cal.App.3d 1012, 1028.)

Avram argues there is insufficient evidence that the Permanent Record is "complete, accurate and/or corresponds to lifetime gifts that [David] made to his children."  But it does not purport to be a complete and accurate record of lifetime gifts.  It only reflects those gifts David chose to be taken into account in adjusting the final trust distributions.  In addition, Avram's e-mails to Benita confirmed that the distributions Benita made to Avram would go on his Permanent Record.

Avram did not challenge any specific distribution in the trial court, and he waited until his reply brief to challenge specific distributions on appeal.  This presents a double bar to considering the issue.  We will not consider points on appeal that were not presented to the trial court.  (*In re Marriage of Hinman* (1997) 55 Cal.App.4th 988, 1002 [failure to raise the point in the trial court waived right to challenge on appeal].)  Moreover, we will not consider matters raised for the first time in the reply brief.  (*Scott v. CIBA Vision Corp.* (1995) 38 Cal.App.4th 307, 322.)

DISPOSITION

The judgment (order granting petition for instructions) is affirmed. Benita shall recover her costs on appeal.

CERTIFIED FOR PUBLICATION.


TANGEMAN, J.

We concur:


GILBERT, P. J.


PERREN, J.

Colleen K. Sterne, Judge

Superior Court County of Santa Barbara

_____

The Stone Law Group, Kenneth H. Stone and Scott G. Braden, for Defendant and Appellant.

Reicker, Pfau, Pyle & McRoy, Alan A. Blakeboro, Diana Jessup Lee and Meghan K. Woodsome, for Plaintiff and Respondent.